UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERINET, INC.<br><br>Plaintiff,<br><br>v.<br><br>JOINT PURCHASING CORPORATION,<br><br>and<br><br>CREATIVE SOURCE CONCEPTS, INC.,<br><br>Defendants. | ) | CA 07- 07 91 ML |

**COMPLAINT**

COMES NOW Plaintiff, Amerinet, Inc., and for its Complaint against Joint Purchasing Corporation and Creative Source Concepts, Inc., states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Amerinet, Inc. is a Delaware corporation having its principal place of business in the State of Missouri. Amerinet is a group purchasing organization ("GPO") that negotiates volume discount contracts with suppliers and distributors to provide various healthcare related goods and services to Amerinet's member facilities, including hospitals, medical group practices, nursing homes, surgery centers, managed care organizations, long term facilities, provider pharmacies, clinics, and integrated delivery networks.

2. Amerinet, Inc. is the successor-in-interest to Vector Healthsystems, Inc., which entered into a contract to purchase the Defendants' group purchasing businesses and contracts. Vector Healthsystems, Inc. transferred the entirety of its interest in these assets to Amerinet, Inc. on April 10, 2006. As used in this Complaint, "Amerinet" shall refer to both Amerinet, Inc. and its predecessor-in-

interest, Vector Healthsystems, Inc.

3. Defendant Joint Purchasing Corporation ("JPC") is a New York non-profit corporation having its principal place of business in the State of New York. Prior to March 11, 2004, JPC was a GPO serving a number of non-profit healthcare providers throughout the United States.

4. Defendant Creative Source Concepts, Inc. ("CSC") is a New Jersey corporation having its principal place of business in the State of New York. CSC is a wholly-owned subsidiary of JPC. Prior to March 11, 2004, CSC was a GPO serving a number of for-profit healthcare providers throughout the United States.

5. This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a), which provides for original jurisdiction in the district courts of all actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and in which there is complete diversity of citizenship among the parties.

6. Defendants JPC and CSC are subject to personal jurisdiction in the State of Rhode Island by virtue of transacting business within this state and under the forum selection clause of their contract with Amerinet, which specifically provides at ¶ 16.3 that "[e]ach party irrevocably agrees that any legal action...with respect to this Agreement may be brought in...[the] United States District Court of Rhode Island...[and] each party irrevocably submits to...such jurisdiction."

7. Venue is appropriate pursuant to 28 U.S.C. § 1391(a)(3), in that both defendants are subject to personal jurisdiction in this judicial district.

## NATURE OF THE ACTION

8. This is an action for conversion, breach of contract, and declaratory relief arising out of a March 11, 2004 contract wherein Amerinet purchased Defendants' GPO businesses, including all of Defendants' "contracts, agreements, and arrangements" and the right to use the "JPC" name. After

Defendants' contracts were assigned to Amerinet, a number of parties to the assigned contracts continued to submit their payments directly to Defendants. Until recently, Defendants promptly forwarded these payments to Amerinet, their rightful owner. Now, however, Defendants are improperly withholding $406,528.34 in payments received under the assigned contracts. Additionally, Defendants now claim that they never intended to sell the "JPC" name, despite the unambiguous language of the parties' contract. Amerinet has filed the present action to recover the wrongfully withheld payments and to settle the parties' ongoing dispute as to the proper owner of the "JPC" name.

## FACTUAL BACKGROUND

9. On or about March 11, 2004, Amerinet entered into an agreement (the "Asset Purchase Agreement") to purchase Defendants' GPO businesses.

10. Under the terms of the Asset Purchase Agreement, Amerinet acquired "all" of the Defendants' assets "used or useful to conduct the healthcare group purchasing business of [Defendants] as presently conducted," unless such assets were specifically excluded in the agreement. *Asset Purchase Agreement*, ¶ 2.1.

11. Following Defendants' sale of assets to Amerinet, Defendants ceased to operate in the group purchasing field and instead focused their efforts as a non-profit organization on educational programs to the medical community and other endeavors.

### A. The Defendants' Wrongful Retention of Administrative Fees under the GE Medical Systems Contracts

12. Among the contracts Defendants sold to Amerinet under the Asset Purchase Agreement were two medical supply contracts with GE Medical Systems. After the sale, Amerinet assumed all of Defendants' contractual obligations and was entitled to receive all administrative fees under the GE Medical Systems contracts.

13. After the sale of Defendants' contracts, some parties to the transferred contracts (including GE Medical Systems) continued to send their payments to Defendants. Until November 2006, Defendants promptly remitted all such payments to Amerinet. During this time, Defendants acknowledged in writing that Amerinet was entitled to all of the funds received under the assigned contracts.

14. Between November 7, 2006 and February 14, 2007, Defendants received wire transfers in the following amounts from GE Medical Systems as payment for services Amerinet rendered under the assigned contracts:

(i) a November 7, 2006 wire transfer in the amount of $6,784.99;

(ii) a November 29, 2006 wire transfer in the amount of $249,291.31;

(iii) a February 2, 2007 wire transfer in the amount of $132,439.19;

(iv) a February 7, 2007 wire transfer in the amount of $6,726.55; and

(v) a February 14, 2007 wire transfer in the amount of $11,286,30.

15. Defendants have retained the funds from the above wire transfers and have not remitted these payments to Amerinet. On information and belief, Defendants have caused these funds to be deposited into the IOLA trust account of their attorneys, the Jacobson Mermelstein & Squire LLP law firm.

16. When Defendants received these wire transfers, they were aware that the GE Medical Systems contracts had been assigned to Amerinet under the March 11, 2004 Asset Purchase Agreement. Defendants were also aware that Amerinet—not Defendants—had been servicing these contracts since 2004 and were entitled to the full amount of the payments.

17. Amerinet has made repeated demand for Defendants to turn over the above-listed funds. Despite such demands, Defendants have failed and refused to remit these payments to Amerinet.

18. Defendants' retention of the payments is willful and malicious in that Defendants have no legitimate claim to these payments and know that these payments are the property of Amerinet. Defendants are retaining these payments in an attempt to pressure Amerinet to relinquish its right to the "JPC" name (as discussed below), not out of any legitimate confusion as to the payments' proper owner.

**B. <u>The Parties' Dispute as to the Owner of the "JPC" Name</u>**

19. The parties' March 11, 2004 Asset Purchase Agreement also provided for the sale of various intellectual and intangible assets. Specifically, the Asset Purchase Agreement provided that Amerinet was acquiring the following assets from Defendants:

> all tangible and intangible assets necessary or appropriate for the performance of, and to realize the substantive benefits of, the Participant Agreements and the Supplier Agreements and to carry on the business, including but not limited to all tangible and intangible assets used or useful in the Business, intellectual property (including but not limited to trademarks), domain names/URLs, website, email, telephone numbers, software and hardware.

*Id.* at ¶ 2.1(c).

20. Although the Asset Purchase Agreement excluded certain enumerated assets from the sale of the Defendants' businesses, the "JPC" name was not listed in any of the Asset Purchase Agreement's exclusions. *Id.* at ¶¶ 2.1, 2.2.

21. The "JPC" name was one of the "intangible assets...necessary or appropriate...to carry on the business" and/or "used or useful in the Business" of Defendants. Accordingly, under the plain terms of the Asset Purchase Agreement, the "JPC" name was transferred to Amerinet on March 11, 2004.

22. Amerinet continued to utilize the "JPC" name in connection with those contracts, agreements, and arrangements acquired from JPC for over two years after the parties entered into the

Asset Purchase Agreement.

23. Defendants knew that Amerinet was using the "JPC" name throughout this time period but raised no concerns or objections until late in 2006.

24. On or about October 16, 2006, JPC president Christopher Moore notified Amerinet that JPC objected to Amerinet's continued use of the "JPC" name in connection with the businesses Defendants sold under the Asset Purchase Agreement. JPC further contended that Amerinet's continued use of the "JPC" name was a breach of the Asset Purchase Agreement and "could be fraud."

25. Amerinet denies that its use of the "JPC" name is improper under the Asset Purchase Agreement or tortious in any way. On the contrary, the plain terms of the Asset Purchase Agreement expressly provide that Amerinet owns the "JPC" name and all other intangible assets "used or useful" in carrying on the businesses purchased from Defendants.

## COUNT I – CONVERSION

26. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

27. Defendants are in possession of specifically identifiable funds (the five wire transfers from GE Medical Systems totaling $406,528.34) that rightfully belong to Amerinet.

28. Defendants have refused to surrender these funds after demand by Amerinet, thereby exercising dominion over these funds in a manner inconsistent with Amerinet's right to possession, and therefore, Plaintiff has been damaged.

29. Defendants' conduct was intentionally and maliciously wrongful and in bad faith in that Defendants know Amerinet to be the rightful owner of the funds and are withholding these funds in an attempt to force Amerinet to relinquish its right to the "JPC" name. Punitive damages are therefore necessary to deter Defendants from engaging in such wrongful conduct in the future.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet $406,528.34, the amount of the funds wrongfully converted;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) awarding Amerinet punitive damages as necessary to deter Defendants from engaging in similar wrongful and tortious conduct in the future;

(d) directing Defendants to immediately transfer the wrongfully converted funds into an interest bearing escrow account maintained and supervised by the Court; and

(e) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT II – BOOK ACCOUNT**

30. Amerinet incorporates by reference paragraphs 1 though 25 as though fully set forth herein.

31. Plaintiff and Defendants entered into an Asset Purchase Agreement whereby Plaintiff is entitled to certain funds for administrative services provided to certain medical supply units, including GE Medical Systems.

32. Defendants breached the Asset Purchase Agreement by failing to surrender funds received from GE Medical Systems to Plaintiff in the amount of $406,528.34.

33. As a result of Defendants' breach, Plaintiff has been damaged.

34. Plaintiff's books and records show that the amount due and owing by Defendants totals $406,528.34, exclusive of interest and costs.

Wherefore, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet damages in the amount of $406,528.34;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) directing defendants to immediately transfer the amount of the funds wrongfully withheld by Defendants into an interest bearing escrow account maintained and supervised by the Court; and

(d) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT III – BREACH OF CONTRACT**

35. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

36. The Asset Purchase Agreement is a valid and binding contract, enforceable by Amerinet against Defendants according to its terms.

37. Pursuant to paragraph 2.1 of the Asset Purchase Agreement, Defendants agreed "to sell, assign, transfer and deliver" to Amerinet all of their "contracts, agreements, and arrangements" with their participants, suppliers, and vendors—including Defendants' contracts with GE Medical Systems.

38. Defendants' wrongful retention of payments under the transferred GE Medical Systems contracts constitutes a material breach of the Asset Purchase Agreement.

39. Amerinet has made demand upon Defendants to cure their breach of the Asset Purchase Agreement, but Defendants have failed and refused to cure same.

40. Amerinet has satisfied all conditions precedent to enforcement of the Asset Purchase Agreement.

41. As a direct result of Defendants' breach of the Asset Purchase Agreement, Plaintiff has been damaged.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet damages in the amount of $406,528.34;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) directing Defendants to immediately transfer the amount of the funds wrongfully withheld by Defendants into an interest bearing escrow account maintained and supervised by the Court; and

(d) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT IV – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**

42. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

43. Defendants have a duty of good faith and fair dealing toward Amerinet.

44. By their actions and conduct described above, Defendants have breached their duty of good faith and fair dealing toward Amerinet.

45. As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiff has been damaged.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet damages in the amount of $406,528.34;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) directing defendants to immediately transfer the amount of the funds wrongfully withheld by Defendants into an interest bearing escrow account maintained and supervised by the Court; and

(d) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT V – UNJUST UNRICHMENT**

46. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

47. Defendants received $406,528.34 from GE Medical Systems in exchange for a promise that Defendants would pay Plaintiff the amounts received for services provided.

48. Because Defendants have not paid the amounts due to Plaintiff, Defendants have been unjustly enriched and have benefited.

49. It is contrary to equity to allow Defendants to retain such substantial benefit, and, therefore, Plaintiff is entitled to the benefit that was intended to be conferred upon it though the Asset Purchase Agreement of the parties.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet damages in the amount of $406,528.34;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) directing defendants to immediately transfer the amount of the funds wrongfully withheld by Defendants into an interest bearing escrow account maintained and supervised by the Court; and

(d) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT VI – ATTORNEY'S FEES**

50. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

51. Pursuant to the Asset Purchase Agreement, Defendants are obligated to pay the aforementioned account and have no defense for failing to pay the obligation resulting in the breach of contract.

52. Therefore, Amerinet is statutorily entitled to attorneys' fees pursuant to R.I.G.L. § 9-1-45.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter judgment in its favor and against Defendants Joint Purchasing Corporation and Creative Source Concepts, Inc. as follows:

(a) directing Defendants to pay Amerinet damages in the amount of $406,528.34;

(b) awarding Amerinet pre-judgment interest on the aforesaid amount from the dates Defendants received the wire transfers from GE Medical Systems;

(c) directing defendants to immediately transfer the amount of the funds wrongfully withheld by Defendants into an interest bearing escrow account maintained and supervised by the Court;

(d) awarding Amerinet attorneys' fees; and

(e) providing Amerinet with such other and further relief as may be just and appropriate.

**COUNT VII – REQUEST FOR DECLARATORY JUDGMENT**

53. Amerinet incorporates by reference paragraphs 1 through 25 as though fully set forth herein.

54. There is an actual controversy between Amerinet and Defendants that is ripe for adjudication at this time as Defendants have claimed that Amerinet's continued use of the "JPC" name is improper and a violation of the parties' contract, while Amerinet asserts that the "JPC" name was a transferred asset under the Asset Purchase Agreement.

55. Accordingly, Amerinet requests that this Court enter a declaratory judgment pursuant to the authority granted it under 28 U.S.C. § 2201 *et seq.*, declaring that ownership of the "JPC" name was transferred to Amerinet under the terms of the Asset Purchase Agreement.

WHEREFORE, Plaintiff Amerinet, Inc. respectfully requests that the Court enter a judgment declaring Amerinet to be the rightful owner of the "JPC" name under the terms of the Asset Purchase Agreement, and provide Amerinet with such other and further relief as may be just and appropriate.

Amerinet, Inc.
By its Attorney,

Linn F. Freedman
_______________________
Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: March 7, 2007

3525569