UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERINET, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 07-91 ML |
| | ) | |
| JOINT PURCHASING CORPORATION, | ) | |
| And CREATIVE SOURCE CONCEPTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**AMERINET, INC.'S OBJECTION TO DEFENDANTS' MOTION TO STAY**

Plaintiff, Amerinet, Inc. hereby objects to Defendants' Motion to Stay for the reasons set forth in the accompanying Memorandum in Support of Motion to Stay.

Respectfully submitted,

Amerinet, Inc.
By its Attorney,

/s/ Linn F. Freedman
Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: May 18, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2007, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to:

David A. Wollin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwollin@apslaw.com

/s/ Linn F. Freedman

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERINET, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CA 07-91 ML |
| | ) | |
| JOINT PURCHASING CORPORATION, | ) | |
| And CREATIVE SOURCE CONCEPTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**AMERINET, INC.'S OBJECTION TO DEFENDANTS' MOTION TO STAY**

Defendants request that this case be stayed until Amerinet's Motion to Dismiss/Transfer the New York action is decided. Although it is appropriate for the Southern District of New York to decide "whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies," *Cruz v. Hartford Cas. Ins. Co.*, 2005 WL 1231965, Case No. 005-38S (D. R.I. May 20, 2005), Defendants have not shown any likelihood of success in defeating Amerinet's Motion to Dismiss/Transfer to support the instant Motion to Stay. In this case, it is not appropriate to defer to the first-filed action in New York and this Court should deny Defendants' Motion to Stay because: (1) the forum selection clause contained in the Asset Purchase Agreement is controlling and requires the parties to litigate in this forum – not New York; (2) Defendants have waived any objections to venue in this Court; and (3) departure from the first-filed rule is appropriate to encourage alternative dispute resolution and given the procedural posture of both cases.

Defendants already requested and obtained a stipulation from Plaintiff providing Defendants with an extension of time to file an answer or other responsive pleading up to and including May 1, 2007. The Court entered this stipulation and reset the filing deadlines

indicating that Defendants' Answer was due on May 1, 2007. Rather than file an Answer, Defendants now seek to further delay these proceedings and seek a "temporary stay" for an undetermined period (that could last six months (or more)). During this time, both cases would in effect be stayed without an answer filed in either case and no discovery exchanged. As such, a stay would serve only to further delay these proceedings, reward Defendants' strategic maneuvering and deliberately disregard the forum selection clause, and do nothing to promote the interest of justice.

## BACKGROUND

Defendants entered into an Asset Purchase Agreement, dated March 11, 2004, (the "JPC Asset Purchase Agreement") with Vector Healthsystems, Inc., ("Vector"), a Rhode Island corporation, with its principal place of business in Providence, Rhode Island. Amerinet, Inc. ("Amerinet") is the successor-in-interest to Vector. At that time, Defendants exited the group purchasing business but continued to operate as a non-profit organization solely for the purpose of providing educational programs to the medical community. Ex. 1, Saucier Affidavit ¶ 4.

Pursuant to the plain language contained in Section 2.1 of the JPC Asset Purchase Agreement, Defendants agreed to sell, assign, transfer and deliver to Vector:

> all of the following assets of the Sellers (the "Business")( **used or useful to conduct the healthcare group purchasing business of Sellers as presently conducted by the Sellers** the "Assets"):
>
> (a) the Sellers' participation contracts, agreements and arrangements with participants ("Participant Agreements");
>
> (b) the Sellers' contracts, agreements and arrangements with suppliers/vendors which have been disclosed in writing by the Sellers to the Buyer ("Supplier Agreements"); and
>
> (c) **all tangible and intangible assets necessary or appropriate for the performance of, and to realize the substantive benefits of, the Participant Agreements and the Supplier Agreements and to carry on the Business**,

> including but not limited to all tangible and intangible assets used or useful in the Business, intellectual property (including but not limited to trademarks), domain names/URLs, website, email addresses, telephone numbers, software and hardware (except those items set forth on Schedule 2.1).

JPC Asset Purchase Agreement, § 2.1 (emphasis added). The JPC Asset Purchase Agreement also contains a governing law section that states:

> This Agreement has been made in and its validity, interpretation, construction and performance, shall be governed by and be in accordance with the laws of the State of Rhode Island, without regard to conflicts of law principles, but subject to any provisions of the New York Not-For-Profit Corporation Law to the extent applicable to JPC, which shall govern in any such circumstance. **Each party irrevocably agrees that any legal action or proceedings against or with respect to this Agreement may be brought in the courts of the State of Rhode Island, or in any United States District Court of Rhode Island, and, by its execution and delivery of this Agreement, each party hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue in any of the above courts**, but subject to the exclusive jurisdiction of any appropriate Court of the State of New York, including but not limited to the Office of the Attorney General, because of the not-for-profit status of JPC.

JPC Asset Purchase Agreement § 16.3 (emphasis added).

As stated in the governing law section, the JPC Asset Purchase Agreement was made in Rhode Island. *Id.* A majority of the actions surrounding the negotiation and closing related to the JPC Asset Purchase Agreement were performed in Rhode Island. Defendants' representatives, including Wayne Thompson and Edward Cienki, traveled to Rhode Island to negotiate and structure the terms of the JPC Asset Purchase Agreement.[1] Ex. 1, Saucier Affidavit ¶ 6-7. Vector executed the JPC Asset Purchase Agreement in Rhode Island and all of the documents related to the JPC Asset Purchase Agreement were assembled and the closing binder was prepared in Rhode Island. *Id.* at ¶¶ 8 and 10. Moreover, Vector paid the purchase

[1] Christopher Moore was not involved in the negotiation or execution of the JPC Asset Purchase Agreement in any way, and in fact did not become President of JPC and CSC until after the transaction closed. *Id.* at ¶¶ 2 and 16. As such, any affirmations provided by Mr. Moore in his Affidavit with respect to the negotiation or execution of the JPC Asset Purchase Agreement is hearsay.

price to Defendants by wire transfer originating in Rhode Island. *Id.* at ¶ 9.

After benefiting from the JPC Asset Purchase Agreement for more than three years, Defendants first complained of Amerinet's use of the JPC name at the end of 2006 and then improperly withheld $406,528.34 in payments received under the assigned contracts to leverage a renegotiation of the agreements and re-enter the group purchasing business.

Amerinet initiated dispute resolution procedures more than a month before Defendants filed their Complaint in the Supreme Court of the State of New York. Only after JPC terminated informal attempts to resolve this dispute and rejected Amerinet's request to engage in a contractually mandated initial dispute resolution, did Amerinet file its Demand for Arbitration against JPC with the American Arbitration Association ("AAA") in Providence, Rhode Island. *See* Ex. 2, Ebert Affidavit ¶¶ 9-11. JPC filed its Response and Counterclaims to Amerinet's claims with the AAA raising issues related to the JPC Asset Purchase Agreement and objecting to the AAA's authority to address all issues raised by the parties. *Id.* at ¶ 12. JPC did not, however, object to Rhode Island as an "inconvenient forum" with respect to the AAA proceedings. *Id.*

In light of JPC's objection to the AAA's authority to address issues arising under the JPC Asset Purchase Agreement, the parties agreed to withdraw their respective claims without prejudice in order to litigate all issues in one forum. *Id.* Prior to entering this agreement with Amerinet's counsel, however, Defendants' counsel failed to disclose that he had already filed the Complaint against Amerinet in the Supreme Court of the State of New York (the "State Court Action"). *Id.* at ¶¶ 13; 15-16. Only after Amerinet agreed to withdraw its arbitration demand did JPC's counsel indicate that he had filed the State Court Action. At no time, however, did Amerinet discuss or agree to reassert its claims raised in the arbitration proceedings as a

counterclaim to the State Court Action. In fact, Amerinet had already drafted its Complaint to be filed in Rhode Island, obtained local counsel in Rhode Island, and delayed filing only in light of the pending arbitration. Amerinet filed its Complaint in this Court less than two weeks after JPC filed the State Court Action. *Id.* at ¶¶ 13-14.

## ARGUMENT

### I. The Forum Selection Clause Contained in the JPC Asset Purchase Agreement is Mandatory and Requires the Parties to Litigate in this Court.

Defendants contend that they "filed in New York because that jurisdiction is a proper venue for the current litigation," and take the position that "the New York action is the only proper forum for the present dispute," but fail to even disclose to this Court the existence of the mandatory and controlling forum selection clause contained in the JPC Asset Purchase Agreement. *See* Defendants' Memorandum of Law In Support of Motion to Stay, p. 7.

Section 16.3 of the JPC Asset Purchase Agreement states, "this Agreement has been made in and its validity, interpretation, construction and performance, shall be governed by and be in accordance with the laws of the State of Rhode Island." It also provides that "each party irrevocably agrees that any legal action or proceedings against or with respect to this Agreement may be brought in the courts of the State of Rhode Island, or in any United States District Court of Rhode Island." Moreover, Section 16.3 of the JPC Asset Purchase Agreement contains unambiguous language providing that "each party hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue in any of the above courts." These contractual clauses, taken as whole, constitute a mandatory forum selection agreement.

The language contained in Section 16.3 of the JPC Asset Purchase Agreement is directly analogous to language considered by the Seventh Circuit in *AAR Int'l, Inc. v. Nimelias Enters.*

*S.A.*, 250 F.3d 510, 525-526 (7th Cir. 2001). In *AAR Int'l*, the Seventh Circuit rejected the argument that the forum selection clause was permissive, not mandatory, because it provided that "suit *may* be brought in Illinois." *Id.* at 526 (emphasis in original). The Court found, "in this case we have more than merely a permissive forum selection clause; we have such a clause plus unambiguous language providing that the lessee shall not object to venue in an Illinois state or federal court on the ground that such a court is an inconvenient forum." *Id.* at 525-526. In so holding, the Seventh Circuit distinguished the permissive forum selection clause identified by the Second Circuit in *Blanco v. Banc Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993),[2] which contained the word "may" in its forum selection clause but "did not include either the defendant's irrevocable consent to suit in designated fora or the defendant's waiver of *forum non conveniens* objections." *AAR Int'l, Inc.*, 250 F.3d at 526; *see also Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercia, C.A.*, 490 N.Y.S.2d 670, 674 (N.Y. Sup. Ct. 1985)(cited by the Second Circuit in *Blanco* as an example of where the permissive nature of a forum selection clause was strengthened by language that "further and explicitly waived 'any objection which it may not or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement…' and further explicitly waived 'any claim that the State of New York is not a convenient forum for any such suit, action or proceeding'").

---

[2] The forum selection provision at issue in *Blanco* states:

> [Proyecfin and BIV agree] that any legal action or proceedings arising out of or in connection with this Agreement may be brought [emphasis added] in the High Court of Justice in England, the Courts of the State of New York, the Courts of the United States of America in New York or the Courts of the City of Caracas, Venezuela, irrevocably submit[ ] to the jurisdiction of each such court and agree[ ] that any writ, judgment or other notice of legal process shall be sufficiently served on [them] (i) in connection with proceedings in England, if delivered to the Law Debenture Corporation, Limited at Estates House, 66 Gresham Street, London, EC2V 7HX or its other registered office for the time being and (ii) in connection with proceedings in New York, if delivered to CT Corporation System at 277 Park Avenue, New York, N.Y. 10017, U.S.A. or [its other] principal place of business in New York for the time being.

997 F.2d at 976.

In this case, Defendants make the unsupported assertion that, "the Purchase Agreement does not provide for exclusive venue in Rhode Island." Defendants' Memorandum of Law in Support of Motion to Stay, pp. 3-4. Any attempt to characterize the forum selection clause in the JPC Asset Purchase Agreement as permissive because it also contains an agreement that New York is an appropriate forum, however, must fail because this argument can only be made based on a selective reading of Section 16.3. As noted above, when the JPC Asset Purchase Agreement was negotiated and executed, Defendants exited the group purchasing business but continued to operate as a non-profit organization solely for the purpose of providing educational programs to the medical community. *See* Ex. 1, Saucier Affidavit ¶ 4. The language in Section 16.3 relating to "New York Not-For-Profit Corporation Law" and the "jurisdiction of any appropriate Court of the State of New York or administrative proceeding in such State" is specifically limited to "any matter which requires the participation of any department or governmental agency of the State of New York, including but not limited to the Office of the Attorney General, because of the not-for-profit status of JPC."

In fact, the inclusion of the exception in Section 16.3 related to JPC's not-for-profit status supports Amerinet's position that the forum selection clause is mandatory and refutes any argument that the "exclusive" language in the governing law section of the JPC Asset Purchase Agreement related to actions involving the New York Attorney General illustrates the parties' intent to use permissive language in the preceding clause. In *Am. Home Assurance Co. v. M/V Hanjin Marseilles*, 2004 WL 1197240, Case No. 03CV9539 (S.D. N.Y. June 1, 2004), the Court examined a similar carve out exception contained in the forum selection clause "that makes clear its mandatory nature." *Id.* at *4. The forum selection clause contained in the bill of lading at issue in *Am. Home Assurance Co.*, stated:

> (a) Any dispute arising under and in connection with this Sea Waybill shall be governed by German Law and determined by the Courts of Bremen.
>
> (b) With regard to contracts of carriage concluded in France, or entered into with a French port, the court where the carrier has its principal place of business be also competent in case of "APPEAL ON GUARANTEE" or "PLURALITE DE DEFENDEURS" or "CONNEXITE"... .

*Id.* The Court found the forum selection clause to be mandatory. *Id.* at *5. In so holding, the Court reasoned that "contracts must be read in their entirety" to "safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.* "If the first paragraph of the forum selection clause were permissive, the France carve-out to the forum selection clause in the second paragraph would be superfluous. This further shows that the first paragraph of the forum selection clause is mandatory." *Id.*

Like the forum selection clause in *Am. Home Assurance Co.*, the language in Section 16.3 of the JPC Asset Purchase Agreement that creates the carve out exception for JPC's not-for-profit status would be rendered superfluous if the forum selection clause was considered permissive rather than mandatory. The not-for-profit exception, however, is not applicable in this case. Defendants make no allegations that their claims asserted in the State Court Action impact JPC's not-for-profit status or require approval or oversight by the New York Office of the Attorney General. As such, the exception in Section 16.3 for JPC's not-for-profit status does not apply. Any argument that the "exclusive" language in the governing law section of the JPC Asset Purchase Agreement related to actions involving the New York Attorney General illustrates the parties' intent to use permissive language in the preceding clause must similarly fail. New York is not a proper venue, and this case should be permitted to proceed.

## II. The Southern District of New York Should Transfer the Case to this Court.

Defendants also make the unsupported assertion that New York "is the only proper forum

for the present dispute." Defendants' Memorandum of Law in Support of Motion to Stay, p. 7. That assertion is false and it is clear that venue properly lies in this Court. If the Southern District of New York does not dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a), it should nonetheless transfer venue to this Court pursuant to 28 U.S.C. § 1404(a). Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

District Courts are to conduct a two-part analysis to determine whether a civil action should be transferred. First, the Court must determine if venue properly lies in the transferee court. Only if venue is proper in the transferee court is section 1404(a) applicable. If venue is proper, the Court must consider two categories of factors: (1) the private interests of the litigants; and (2) the public interest in the fair and efficient administration of justice.[3] *Gulf Oil v. Gilbert*, 330 U.S. 501, 508-509 (1947)(reversing Second Circuit's decision and finding that the Southern District of New York's decision to dismiss complaint in favor of a forum in Virginia did not exceed the trial court's authority).

### A. Convenience of the Parties and Witnesses – Defendants Waived Any Objections to Venue in the District of Rhode Island

In this case, the governing law section of the JPC Asset Purchase Agreement precludes any argument that venue would not properly lie in Rhode Island. Defendants' exhortations

---

[3] Under *Gulf Oil*, the private interest factors are: (1) plaintiffs' choice of forum; (2) the relative ease of access to sources of proof; (3) the availability and cost of compulsory process for unwilling witnesses; (4) obstacles to a fair trial; (5) the possibility of viewing the premises, if viewing the premises would be appropriate to the action; and (6) all other factors relating to the expeditious and efficient adjudication of the dispute. *Id.*

The public interest factors are: (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating localized disputes; and (4) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

related to the extra cost and inconvenience of litigating their claim in this Court rather than the Southern District of New York should not be given substantial weight, if any, given their prior waiver of any such objections to venue. Defendants explicitly waived any objections to the cost and inconvenience of litigating this action in Rhode Island in the governing law section of the JPC Asset Purchase Agreement. Specifically, Section 2.1 states, "each party… hereby irrevocably waives <u>any and all objections</u> which it may have as to venue in [United States District Court of Rhode Island]" (emphasis added).

Where it is clear that the parties considered (and waived) any objections related to the convenience of the venue identified in a forum selection clause, the Court should not consider Defendants' objections in its analysis. *See Kotan v. Pizza Outlet, Inc.*, 400 F. Supp.2d 44, 49 (D.D.C. 2005) ("agreement to waive venue objections to a particular forum … colors plaintiffs' other arguments premised on the inconvenience of parties and witnesses and interest of justice"); *see also Lyon Fin. Servs., Inc. v. Will H. Hall & Son Builders, Inc.*, Case No. 04CV4383, 2005 WL 503371 at *4-5 (D. Minn. March 4, 2005)(stating that it is a "high bar" to demonstrate inconvenience "[s]ince it may be assumed that the parties consider the inconvenience of the forum at the time they enter a contract" containing a forum selection clause); *2215 Fifth St. Assocs. v. U Haul Int'l, Inc.*, 148 F.Supp.2d 50, 58 (D.D.C. 2001)("Plaintiff evidently agreed that any inconveniences were manageable when it agreed to [the] inclusion [of a forum selection clause] in the Option Agreement"); and *Third Avenue Trust v. Suntrust Bank*, 163 F. Supp. 2d 215, 220-21 (S.D.N.Y. 2001)(difficulties in procuring evidence and witnesses outside of New York "was, or reasonably should have been, contemplated by [defendant] when it agreed to the forum selection clauses"). Consistent with its prior and explicit waiver, JPC did not object to

Rhode Island as an "inconvenient forum" with respect to the prior AAA proceedings. Ex. 2, Ebert Affidavit ¶ 12.

Further, the Court should adhere to the general principle that Amerinet's choice of forum, as the true Plaintiff in this case is entitled to great weight and should be disturbed only in exceptional circumstances. *Elbalah v. Republic Ins. Co.*, 879 F. Supp. 3, 4 (D.R.I. 1995).

Defendants have not shown that they (or their witnesses) would be unduly inconvenienced. For example, Mr. Moore lives in Chicago. *Id.* at ¶ 9 n. 2. Defendants' cost and inconvenience to have him testify as a witness would be the same regardless of whether this action were to proceed in New York or Rhode Island. Moreover, more than half of the witnesses Defendants identified in the New York City area are current party employees and would be required to appear in either forum.

Amerinet anticipates that Sandra Mack, Esq., Karl Brother, and Wayne Thompson will all be critical, non-party witness in this case who would be beyond this court's subpoena power under Rule 45(e). *See* Fed.R.Civ.P. 45(e)(non-party may not be held in contempt for failure to obey subpoena requiring non-party to travel to a place more than 100 miles from the place she resides). Ms. Mack, was outside counsel for Vector in connection with the negotiation, drafting, and execution of the JPC Asset Purchase Agreement. *See* Ex. 2, Ebert Affidavit ¶ 17 (a). Ms. Mack is expected to testify that the JPC name was a transferred asset pursuant to the terms of the JPC Asset Purchase Agreement. *Id.* Mr. Brother was Vector's Senior Vice President, Sales and was integrally involved in the negotiation of the JPC Asset Purchase Agreement. *Id.* at ¶ 17 (b). Similarly, Mr. Thompson is a former Amerinet and JPC employee. Mr. Thompson was involved in the negotiation of the JPC Asset Purchase Agreement and executed the JPC Asset Purchase Agreement in his capacity as President and Chief Executive Officer of JPC. *Id.* at ¶ 17 (c).

**B. Interest of Justice.**

This Court has a greater interest in this action because most of the central facts of the lawsuit occurred in Rhode Island. As stated in the governing law section, the JPC Asset Purchase Agreement was made in Rhode Island. JPC Asset Purchase Agreement § 16.3. A majority of the actions surrounding the negotiation and closing related to the JPC Asset Purchase Agreement were performed in Rhode Island. Defendants' representatives, including Wayne Thompson and Edward Cienki, traveled to Rhode Island to negotiate and structure the terms of the JPC Asset Purchase Agreement. *See* Ex. 1, Saucier Affidavit ¶¶ 6-7. Vector executed the JPC Asset purchase Agreement in Rhode Island and all of the documents related to the JPC Asset Purchase Agreement were assembled and the closing binder was prepared in Rhode Island. *Id.* at ¶¶ 8 and 10. Moreover, Vector paid the purchase price to Plaintiffs by wire transfer originating in Rhodes Island. *Id.* at ¶ 9.

In a diversity action it is also considered advantageous to have federal judges decide a case who are familiar with the applicable state law. *Gulf Oil,* 330 U.S. at 509. Pursuant to the governing law section of the JPC Asset Purchase Agreement, Rhode Island law applies with respect to the validity, interpretation, construction and performance of the JPC Asset Purchase Agreement. JPC Asset Purchase Agreement § 16.3. This Court will undoubtedly have greater familiarity and interest than the Southern District of New York in applying Rhode Island's contract law.

**C. Departure From First Filed Rule is Appropriate to Encourage Alternative Dispute Resolution and Given the Relative Procedural Posture of Both Cases.**

Defendants argue that this case should be stayed because they filed their Complaint with the Supreme Court of the State of New York less than two weeks before Amerinet filed its Complaint in this case. It is well established, however, in both the First and Second Circuits that

exceptions to the "first filed" rule exist and are regularly applied. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)("While the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound"); *Hammet v. Warner Bros. Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir. 1949)(the "first filed" rule "is not to be applied in a mechanical way regardless of other considerations"). In fact, courts applying *Codex* have found that "giving priority to the first-filed case is not a rigid rule," *Davox Corp. v. Digital Sys. Int'l*, 846 F.Supp. 144, 147 (D. Mass. 1993), and that "the first-filed preference… is not to be given great weight." *Lexington Ins. Co. v. City of Phoenix*, Ariz., 1996 WL 463672, Case No. 96-10319 at *1 (D. Mass., July 31, 1996); *see also Nortek, Inc. v. Molnar*, 36 F.Supp.2d 63, 69-70 (D. R.I. 1999)("The forum where an action is first filed is given priority over subsequent actions unless there is a 'showing of balance of convenience in favor of the second action' or there are special circumstances which justify giving prior to the section"); *EMC Corp. v. Roland*, 916 F.Supp. 51, 53-54 (D. Mass. 1996) (rejecting application of first-filed rule).

In this case, there are multiple considerations which require a departure from the first-filed rule. First, the relative backlog of cases in the District of Rhode Island is significantly less than in the Southern District of New York. *See* United States District Court Judicial Caseload Profile at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. As such, it is unlikely that the retention of this case in the Southern District of New York would fulfill the purpose of the first-filed rule and promote judicial efficiency.

In addition, Amerinet initiated the Rhode Island action less than two weeks after Defendants filed the State Court Action. Significantly, neither case has progressed beyond the initial pleadings. Defendants have not shown that they would be precluded from joining all

necessary parties and asserting identical claims in this case (via a counterclaim or third party action) or that the two cases could not be consolidated to efficiently address all issues.

Moreover, this case should be permitted to proceed to discourage anticipatory filing and to encourage alternative dispute mechanisms. In *Lexington Ins. Co.*, the Court strongly criticized the plaintiff's "sharp practice" of filing an anticipatory declaratory judgment claim "to obtain its choice of forum" where there was "not a scintilla of evidence that Lexington was motivated to bring suit by any concern about the possibility of uncertainty or delay." 1996 WL 463672, Case No. 96-10319 at *2. In finding that transfer was an "appropriate mechanism for discouraging anticipatory filing," the Court reasoned "a system that permits a potential defendant to gain from anticipatory filing increases the burden on all districts as parties rush to file suit in their home districts rather than attempting to negotiate their differences." *Id.* Similarly in *Nortek*, the Court rejected the first filed rule where plaintiff shopped for a forum while defendant's attorney "reasonably held off filing suit… because he thought the parties were still negotiating" and "one would reasonably expect that after negotiations broke down, [plaintiff] would file this case in Buffalo." 36 F. Supp.2d at 70. In so holding, the Court stated, "it will not reward conduct that undermines the sound policy of promoting settlements and negotiations outside the courthouse." *Id.*; *see also Fuji Photo Film Co., Ltd. v. Deep Creek Design, Inc.*, Case No. 98CV2776, 1998 WL 872416 at *2 (S.D.N.Y. Dec 15, 1998) (rejecting first-filed rule where "[plaintiff] had prepared a complaint that it was ready to file but deferred while pursuing settlement talks"); *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F.Supp. 114, 117 (S.D. N.Y. 1984)("in the instant situation where each side, after a breakdown in settlement negotiations, engages in a race to the courthouse to achieve 'first filed' status, the courts should be concerned with what the interests of justice require and not with who won the race").

In this case, Amerinet attempted to resolve this dispute informally and without resort to litigation on a number of occasions. Ex. 2, Ebert Affidavit ¶¶ 9-11. These discussions, however, were terminated by Defendants. *Id.* at ¶ 9. In addition to pursuing informal discussions, Amerinet sought to enforce the alternative dispute resolution provisions in the Management Services Agreement, but its request was rejected by JPC. *Id.* at ¶ 10. Only then did Amerinet initiate arbitration proceedings with the AAA in Providence, Rhode Island. *Id.* at ¶ 11. JPC filed its Response and Counterclaims to Amerinet's claims with the AAA raising issues related to the JPC Asset Purchase Agreement and objecting to the AAA's authority to address all issues raised by the parties. At that time, JPC did not object to Rhode Island as an "inconvenient forum." *Id.* at ¶ 12. Almost simultaneously, however, Defendants filed their Complaint against Amerinet in the Supreme Court of the State of New York. *Id.* at ¶¶ 12-13.

On March 8, 2007, the parties agreed to withdraw their respective claims without prejudice in order to litigate all issues in one forum. That same day, counsel for Amerinet sent a letter to the AAA case manager withdrawing Amerinet's Demand for Arbitration without prejudice and confirming JPC's agreement to withdraw its Counterclaims. *Id.* at ¶ 15. Despite the fact that Defendants' counsel had been regularly corresponding with David Wells, Amerinet's long-time outside counsel, in conjunction with the arbitration proceedings, he did not disclose that he had filed the State Court Action prior to reaching agreement to withdraw the arbitration claims. *Id.* at ¶ 16. Only after Amerinet agreed to withdraw its arbitration demand did JPC's counsel indicate that he had filed the State Court Action. At no time, however, did Amerinet discuss or agree to reassert its claims raised in the arbitration proceedings as a counterclaim to the State Court Action. In fact, Amerinet had already drafted its Complaint to be

filed in Rhode Island, obtained local counsel in Rhode Island, and delayed filing only in light of the pending arbitration.

Defendants' maneuvering and questionable candor calls into doubt any assertion that they were not forum shopping, and is certainly contrary to "the sound policy of promoting settlements and negotiations outside the courthouse." *Nortek, Inc.*, 36 F.Supp.2d at 70. Like *Nortek* and *Lexington Ins. Co.*, this Court should reject the first-filed rule and permit this action to proceed without further delay.

Respectfully submitted,

Amerinet, Inc.
By its Attorney,

/s/ Linn F. Freedman
Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: May 18, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2007, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to:

David A. Wollin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
dwollin@apslaw.com

/s/ Linn F. Freedman