# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,
Plaintiff,

- against –

AMERINET, INC., AMERINET GROUP PURCHASING LLC, VECTOR HEALTHSYSTEMS, INC., and GENERAL ELECTRIC COMPANY,

Defendants.

Case No. 07 CV 2298 (JGK)

AFFIDAVIT IN SUPPORT OF THE AMERINET DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE

STATE OF CALIFORNIA )
)
COUNTY OF SAN BERNIDINO )

TODD EBERT, being duly sworn, deposes and says:

1. I am the President and Chief Operating Officer of Amerinet, Inc. ("Amerinet"), one of the defendants in the above-captioned action. I have personal knowledge of the facts set forth in this affidavit and would testify competently to them if called as a witness at trial.

2. Amerinet is a group purchasing organization ("GPO") that negotiates volume discount contracts with suppliers and distributors to provide various healthcare related goods and services to Amerinet's member facilities, including hospitals, medical group practices, nursing homes, surgery centers, managed care organizations, long term facilities, provider pharmacies, clinics, and integrated delivery networks.

3. Amerinet is the successor-in-interest to Vector Healthsystems, Inc. ("Vector"), which entered into a contract to purchase the Defendants' group purchasing businesses and contracts (the "JPC Asset Purchase Agreement"). Vector transferred the entirety of its interest in these assets to Amerinet on April 10, 2006.

4. Among the contracts Defendants sold to Vector under the JPC Asset Purchase Agreement were two medical supply contracts with GE Healthcare. After the sale, Vector, and subsequently Amerinet, assumed all of Defendants' contractual obligations and was entitled to receive all administrative fees under the GE Healthcare contracts.

5. The applicable contracts with GE Healthcare are attached as Exhibit C to Christopher Moore's Affidavit.[1] The first Group Purchasing Agreement regarding products for Nuclear Imaging contrast media ("Nuclear Imaging contract") is with Medi-Physics Inc. doing business as GE Healthcare and the second Group Purchasing Agreement regarding contrast media ("Contrast Media contract") is with Amersham Health Inc, doing business as GE Healthcare. Contrary to Mr. Moore's testimony in paragraph 10 of his affidavit, the name GE Healthcare appears on the first line of the first page of both the Nuclear Imaging contract and the Contrast Media contract and is consistently used throughout both agreements.

6. Among the contracts Amerinet assumed from Vector was the Management Services Agreement, dated March 11, 2004. Contrary to Mr. Moore's representations in paragraph 12 of his affidavit, Amerinet had no obligation to "promote the Magnet contracts on behalf of [Joint Purchasing Corporation ('JPC')]."

7. Amerinet's responsibilities pursuant to the Management Services Agreement are delineated in Article III and are limited to: (a) providing day-to-day contracting operations for the group purchasing programs; (b) negotiating and recommending contracts; (c) submitting periodic reports; (d) developing an annual business plan and annual operating budget; (e) retaining all books and records pertaining to its performance of services; and (f) permitting JPC to perform audits of the books and records. These manager responsibilities relate only to

---

[1] The Strategic Alliance Agreements attached as Exhibit A to Mr. Moore's Affidavit are not at issue in this lawsuit and do not provide the basis for payments made by GE Healthcare that are currently and improperly being withheld from Amerinet by Defendants.

Coastal Cooperative of New Jersey, LLC, Cooperative Healthcare Services of New Jersey, L.L.C., and Cardinal Health Initiatives, LLC, and any other limited liability company formed after the date hereof in which JPC shall be a member and manager. These manager responsibilities did not relate in any way to the Magnet contracts.

8. Mr. Moore's assertion is also inconsistent with the fact that sales related to the Magnet contracts have increased since Amerinet assumed the Management Services Agreement from Vector.

9. Nevertheless, in an attempt to resolve this dispute and in response to Mr. Moore's request, I met with him (along with Lee Mermelstein, John Travers, and William H. Prows) in Chicago on November 3, 2006.[2] During this meeting, we discussed the substantial and good-faith efforts Amerinet is making to address JPC's concerns regarding the marketing and management efforts relating to the Magnet GPO program. I attempted to follow up with Mr. Moore by telephone on December 21, 2006 to continue these discussions and arrange a meeting in mid-January. Plaintiffs, however, responded that same day with a set of written demands and notified Amerinet that it was withholding, at that time, $265,076.30 in administrative fees received from GE Healthcare. To date, Defendants have improperly withheld $406,528.34 in administrative fees received from GE Healthcare.

10. By letter dated January 19, 2007, Amerinet requested a meeting with a JPC representative on January 25, 2007 in Providence, Rhode Island pursuant to Article 7.01 of the Management Services Agreement which requires each party to nominate "one (1) representative who shall meet at a location as may be mutually agreeable within five (5) days following such notice to attempt to resolve the dispute." *See* Exhibit A, Jan. 19, 2007 letter from D. Wells to C. Moore. JPC refused to "participate in or undertake the initial dispute

[2] Mr. Moore lives in Chicago, Illinois.

resolution procedure set for in Section 7.01." *See* Exhibit B, Jan. 23, 2007 letter from C. Moore to D. Wells.

11. Subsequently, on February 1, 2007, Amerinet initiated arbitration proceedings with the American Arbitration Association ("AAA") in Providence, Rhode Island, pursuant to the terms of the Management Services Agreement, to recover the administrative fees improperly withheld by JPC.

12. On February 21, 2007, JPC filed its Response and Counterclaims to Amerinet's claims with the AAA raising issues related to the Asset Purchase Agreement and objecting to the AAA's authority to address all issues raised by the parties. JPC did not, however, object to Rhode Island as an inconvenience forum for arbitration.

13. On February 23, 2007, JPC filed its Complaint against Amerinet in the Supreme Court of the State of New York (the "State Court Action") alleging substantially similar claims as asserted in JPC's Counterclaims filed with the AAA.

14. On March 7, 2007, Amerinet filed its Complaint in the United States District Court for the District of Rhode Island.

15. On March 8, 2007, the parties agreed to withdraw their respective claims without prejudice in order to litigate all issues in one forum. That same day, counsel for Amerinet sent a letter to the AAA case manager withdrawing Amerinet's Demand for Arbitration without prejudice and confirming JPC's agreement to withdraw its Counterclaims.

16. Despite the fact that Plaintiffs' counsel had been regularly corresponding with David Wells, Amerinet's long-time outside counsel, in conjunction with the arbitration proceedings, he did not disclose that he had filed the State Court Action prior to reaching agreement to withdraw the arbitration claims.

17. To date, Amerient has identified the following critical, non-party witnesses that reside in Rhode Island:

(a) Sandra Mack, Esq., was outside counsel for Vector in connection with the negotiation, drafting, and execution of the JPC Asset Purchase Agreement. Ms. Mack will be a critical, non-party witness with respect to whether the JPC name was a transferred asset pursuant to the terms of the JPC Asset Purchase Agreement. Ms. Mack is a practicing attorney with Hinkley, Allen & Snyder LLP in Providence, Rhode Island and lives in Bristol, Rhode Island.

(b) Karl Brother was Vector's Senior Vice President, Sales and was integrally involved in the negotiation of the JPC Asset Purchase Agreement. Mr. Brother is currently retired and lives in Warwick, Rhode Island.

(c) Wayne Thompson is a former Amerinet and JPC employee. Mr. Thompson was involved in the negotiation of the JPC Asset Purchase Agreement and executed the JPC Asset Purchase Agreement in his capacity as President and Chief Executive Officer of JPC. Mr. Thompson's current address is unknown.

18. To date, Amerinet has identified the following party witnesses, located in Providence, Rhode Island:

(a) Stephen J. Saucier is the President of Vector. Mr. Saucier was integrally involved in the negotiation of the JPC Asset Purchase Agreement.

(b) John Travers is the Vice President, Business Systems for Amerinet.

(c) Curtis Miller is the Chief Information Officer for Amerient.

(d) Robert Baglini is the Senior Director, Laboratory and Diagnostic Imaging for Amerinet.

FURTHERMORE, THE AFFIANT SAYETH NOT.

Todd Ebert
Amerinet, Inc.

Subscribed and sworn to before me a Notary Public on this the 4th day of May 2007.

Notary Public

My Commission Expires:

RAMONA JACKSON
COMM. #1560353
Notary Public - California
San Bernardino County
My Comm. Expires Mar. 15, 2009

THOMPSON COBURN

Thompson Coburn LLP
Attorneys at Law

One US Bank Plaza
St. Louis, Missouri 63101
314-552-6000
FAX 314-552-7000
www.thompsoncoburn.com

January 19, 2007

David Wells
314-552-6118
FAX 314-552-7118
EMAIL dwells@thompsoncoburn.com

**VIA UPS AND E-MAIL**

Christopher Moore, President
Joint Purchasing Corporation
11 Penn Plaza, 5th Floor
New York, NY 10001
cmoore@jpc.org

Dear Mr. Moore:

In light of Joint Purchasing Corporation's ("JPC") continuing refusal to remit to Amerinet the $256,076.30 it has received from GE Medical, we are initiating the dispute resolution procedures set forth in Article VII of the Management Services Agreement.

This letter shall serve as written notice of the dispute pursuant to Article 7.01. As you know, Article 7.01 also requires each Party to nominate "one (1) representative who shall meet at a location as may be mutually agreeable within five (5) days following such notice to attempt to resolve the dispute." Victor Samolovitch is available to meet with JPC's representative on January 25, 2007 in Providence, Rhode Island. Please let us know on or before January 23, 2007, if the proposed date and location is agreeable, and we will make the necessary arrangements.

Sincerely,

THOMPSON COBURN LLP

By

DW/jlo

EXHIBIT
A

PENGAD 800-631-6989

3502924

cc: Lee Mermelstein, Esq.
Victor E. Samolovitch, CEO
Todd Ebert, President and COO
Stephen Saucier, President

JPC
Since 1922

January 23, 2007

David Wells, Esq.
Thompson Coburn
One US Bank Plaza
St. Louis, MO 63101

Dear Mr. Wells:

Reference is made to my letter to Mr. Todd Ebert of Amerinet, Inc. ("Amerinet") of December 21, 2006, your response to that letter on behalf of Amerinet of January 5, 2006, the response to that letter from Lee Mermelstein, Esq. of Jacobson Mermelstein & Squire, LLP, counsel to Joint Purchasing Corporation ("JPC"), of January 12, 2007 and your letter to me of Friday, January 19, 2007.

This letter shall serve as notice by JPC and its wholly-owned subsidiary, Creative Source Concepts, Inc. ('CSC"), that JPC deems Amerinet in breach of the Management Services Agreement, dated March 11, 2004, between JPC and Vector Healthsystems, Inc., the predecessor in interest to such Agreement to Amerinet ("Vector"), and the Services Agreement, dated March 11, 2004, between CSC and Vector, both for failure to timely and appropriately respond to the requests for information as set forth in my letter to Mr. Ebert of Amerinet of December 21, 2006 for the reasons stated therein. JPC is hereby invoking Section 6.02(ii) of each of the above Agreements relating to the obligation of Amerinet to cure said breaches.

In light of the above, JPC will not participate in or undertake the initial dispute resolution procedure set forth in Section 7.01 with the representative of Amerinet in Providence, Rhode Island on January 25, 2007 as set forth in your letter of January 19, 2007. JPC will only participate in such initial dispute resolution procedure after it has received the above referenced requested information and has the opportunity to examine and study that information.

I strongly suggest that Amerinet provide that information immediately and supply all such information in an expeditious manner in order to avoid affirmative action on the part of JPC to commence termination actions relating to any supplier contracts that we believe were extended or signed without JPC's authorization. Further delay in responding on the part of Amerinet is jeopardizing JPC's continued status as a 501(c)(3) organization and therefore its ability to continue to meet its charter under the New York not-for-profit law.

Very truly yours,

Christopher Moore, President

11 Penn Plaza
5th Floor
New York, NY 10001
212.946.2687
Fax 212.946.2692
cmoore@jpc.org

PENGAD 800-631-6989
EXHIBIT
6