# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------x

JOINT PURCHASING CORPORATION, :

Plaintiff, : Index No. 102622/07

- against - : SUMMONS

AMERINET, INC. and AMERINET GROUP PURCHASING LLC, :

Defendants. : Date Index Number Purchased: 2/26/07

-----------------------------------------x

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to serve upon plaintiff's attorneys an answer to the complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

New York County is designated as the venue of this action based on the location of plaintiff's principal office, which is 11 Penn Plaza, New York, New York.

Dated: New York, New York
February 23, 2007

ARTHUR R. LEHMAN, L.L.C.

By [signature]
Arthur R. Lehman
Attorneys for Plaintiff
52 Vanderbilt Avenue
New York, New York 10017
Telephone(212) 697-2715
Facsimile (212) 697-2773

TO: Amerinet, Inc.
2060 Craigshare Road
St. Louis, Missouri 63146

Amerinet Group Purchasing LLC
2060 Craigshare Road
St. Louis, Missouri 63146

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JOINT PURCHASING CORPORATION,

Plaintiff,

-against-

AMERINET, INC. and AMERINET GROUP PURCHASING LLC,

Defendants.

---

Index No. 102622/07

COMPLAINT

Plaintiff Joint Purchasing Corporation, by its undersigned attorneys, as and for its complaint against defendants Amerinet, Inc. and Amerinet Group Purchasing LLC, alleges as follows:

The Parties

1. Joint Purchasing Corporation ("JPC") is a not-for-profit corporation organized under the laws of the State of New York. In March 2004, JPC was a group purchasing organization serving a number of not-for-profit healthcare providers throughout the United States.

2. On information and belief, defendant Amerinet, Inc. ("Amerinet") is a corporation organized under the laws of the State of Delaware and is a group purchasing organization serving a number of not-for-profit healthcare providers throughout the United States, including New York, through contracts with suppliers and vendors of healthcare-related goods and services, including suppliers and vendors in New York.

3. On information and belief, defendant Amerinet Group Purchasing LLC ("Amerinet LLC") is a Delaware limited liability company authorized to do business in the State of New York and is a group purchasing organization, and is the successor-in-interest to Vector Healthsystems, Inc. ("Vector").

Factual Background

4. In March 2004, JPC and Vector, which was also a group purchasing organization, entered into an Asset Purchase Agreement dated March 11, 2004 (the "Purchase Agreement"). Pursuant to the Purchase Agreement, JPC sold to Vector JPC's then-existing participation contracts, agreements, and arrangements (referred to as "Participant Agreements") with those entities (typically, hospitals and other healthcare providers) that made purchases under contracts that JPC maintained with suppliers and vendors of healthcare-related products and services, together with JPC's contracts, agreements, and arrangements with such suppliers and vendors (referred to as "Supplier Agreements"). The Participant Agreements and Supplier Agreements are referred to in the Purchase Agreement as the "Assumed Agreements." JPC also sold or licensed to Vector the tangible and intangible assets necessary or appropriate for Vector to perform and realize the substantive benefits of the Participant Agreements and the Supplier Agreements.

5. The names "JPC" and "Joint Purchasing Corporation" are not identified in the Purchase Agreement as assets that were sold to Vector, and were not in fact sold to Vector.

6. JPC calculated the purchase price for the assets sold to Vector in the Purchase Agreement on the assumption that the valuable names "JPC" and "Joint Purchasing Corporation" were not being sold. If JPC had intended to sell the names "JPC" and "Joint

Purchasing Corporation" to Vector, it would have demanded a higher purchase price.

7. The Purchase Agreement and related closing documents contemplate that JPC retain its corporate name. For example,

a. The Purchase Agreement provides, at section 11.2, that JPC refrain from competing with Vector for a two year period, after which it is free to re-enter the group purchasing business, presumably in its own name.

b. The Purchase Agreement provides, at section 11.2, that from and after the closing date, JPC may continue to conduct necessary activities related to group purchasing activities as provided in certain ancillary agreements and in connection with certain educational activities, presumably in its own name.

c. The Purchase Agreement provides, at section 11.6, that after closing, JPC shall maintain its corporate existence and remain in good standing. The Purchase Agreement does not require that JPC change its name after closing.

d. In connection with the closing, JPC issued a Bill of Sale and Assignment to Vector conveying the assets sold to Vector. The Bill of Sale does not identify the names "JPC" or "Joint Purchasing Corporation" as transferred assets.

e. In connection with the closing, JPC and Vector entered into a Domain Name Licensing Agreement Dated April 23, 2004 pursuant to which JPC licensed the domain names "jpc.org," "jpc.net," and "jointpurchasingcorp.org" to Vector. The agreement provides, at section 4, "Licensee [Vector] recognizes and acknowledges that Licensor [JPC] is the owner of the Names and all goodwill in association therewith."

8. Certain of the Supplier Agreements required the consent by the supplier or

vendor to the assignment or sale of such agreement. Accordingly, JPC agreed that it would use its best efforts to obtain such consents or approvals to the assignment of the Supplier Agreements to Vector, and Vector agreed that until such consent or approval was obtained, Vector would act as JPC's agent for the purpose of obtaining for JPC the benefits under the Supplier Agreements.

9. The Purchase Agreement provided that JPC and Vector would enter into a Management Services Agreement that would address the services to be performed by Vector with respect to the Assumed Agreements. Accordingly, JPC and Vector entered into a Management Services Agreement dated March 11, 2004 (the "Management Agreement").

10. Pursuant to the Management Agreement, Amerinet was permitted to perform the services on behalf of JPC under the Supplier Agreements only until consent was received from such supplier to assign such Supplier Agreement to Vector (at which time Vector would become the direct contracting party) or the expiration of the terms of such Supplier Agreements (at which time Vector would have to commence negotiations with the supplier in its own name for a new contract). In that regard, the Management Agreement states,

> "WHEREAS, the parties contemplate requesting the consent of such third parties after the Closing (as defined in the Purchase Agreement), however, prior to the obtaining of such consent, Manager [Vector] may provide services as requested by JPC until such consents are obtained or the term of such agreements expire.

11. The Management Agreement provided that Amerinet would service the existing Assumed Agreements on behalf of JPC and would receive in exchange the contract administration fees to which JPC was entitled under the Supplier Agreements. The Management Agreement addresses the rights and obligations of the parties only with respect to those Supplier Agreements that existed as of the date of the Purchase Agreement and were sold under the terms

of the Purchase Agreement. Neither the Purchase Agreement nor the Management Agreement gives any right to Vector to enter into new contracts with suppliers in the name of JPC after the expiration of the Supplier Agreements that were sold to Vector under the Purchase Agreement.

12. On information and belief, pursuant to agreement between Vector and Amerinet LLC dated April 10, 2006, all of the stock or assets of Vector were purchased by Amerinet or Amerinet LLC and the Management Agreement was assigned by Vector to Amerinet or Amerinet LLC, and Amerinet or Amerinet LLC agreed to perform all of the obligations of Vector under the Management Agreement. By virtue of the purchase and sale, Amerinet or Amerinet LLC succeeded to all of the rights and obligations of Vector under the Purchase Agreement.

13. Certain of the Supplier Agreements expired by their terms after the closing under the Purchase Agreement before consent to their assignment to Vector could be obtained. On information and belief, Amerinet, Amerinet LLC, or Vector did not initiate negotiations with the suppliers to replace the expired Supplier Agreements with new agreements between Vector, Amerinet, or Amerinet LLC. Instead, in order to conceal their involvement from the suppliers, Vector, Amerinet, and Amerinet LLC entered into new contracts with suppliers in the name of JPC instead of Amerinet, Amerinet LLC, or Vector. Vector, Amerinet, and Amerinet LLC were not authorized by JPC to enter into such contracts, and JPC had no knowledge that Vector, Amerinet, or Amerinet LLC had entered into such contracts.

14. For example, on information and belief, Vector, Amerinet, or Amerinet LLC entered into a contract with GE Medical Systems after the closing under the Purchase Agreement and after the expiration of the term of any contract between JPC and GE Medical

Systems that existed at the time of the Purchase Agreement and that was an Assumed Agreement. As a result, GE Medical Systems has transferred contract administration fees owed under such contract to JPC (instead of Amerinet or Amerinet LLC) in the mistaken belief that JPC is the party with which GE Medical Systems had contracted.

15. As another example, on information and belief, in or about August 2006 Amerinet or Amerinet LLC entered into a new supplier agreement with Amicas, Inc. for radiology and imaging products under JPC's name. JPC had no previous supplier relationship with Amicas, Inc. and did not transfer any agreement with Amicas, Inc. as one of the Supplier Agreements under the Purchase Agreement.

16. JPC has objected to the acts of Vector, Amerinet, and Amerinet LLC, but Amerinet and Amerinet LLC have taken the position that JPC sold the names "JPC" and "Joint Purchasing Corporation" to Vector in the Purchase Agreement, and Amerinet and Amerinet LLC have unfettered rights to enter into contracts in the name of JPC without knowledge or permission of JPC.

17. The acts of Amerinet and Amerinet LLC have subjected JPC to the possibility of conflicting claims to the contract administration fees paid to JPC in the mistaken belief that JPC, and not Amerinet or Amerinet LLC, is the actual contracting party. For example, if JPC delivers to Amerinet or Amerinet LLC the funds that JPC received from GE Medical Services, JPC could be subject to a claim by GE Medical Services if GE Medical Services accidentally transferred to JPC more than it owed under its contract with Amerinet or Amerinet LLC and seeks to recover such amounts from JPC.

18. The acts of Amerinet and Amerinet LLC have subjected JPC to the

possibility of lawsuits and claims by parties who believe that they have entered into contracts with JPC, when in fact they have entered into contracts with Amerinet or Amerinet LLC which were misleadingly using the name of JPC. JPC is without knowledge of the contracts entered into by Amerinet or Amerinet LLC, and cannot inform the contracting parties that Amerinet and Amerinet LLC lack authority to enter into such contracts in the name of JPC.

19. The acts of Amerinet and Amerinet LLC have damaged the ability of JPC to engage in the group purchasing business. Typically, suppliers and vendors have a single contract with a group purchasing organization for a particular product or service. If JPC attempts to negotiate a contract with a supplier or vendor that has entered into a contract with Amerinet or Amerinet LLC under JPC's name, such supplier or vendor will not enter into another contract with JPC.

20. The acts of Amerinet and Amerinet LLC have increased the risk of damage to JPC's reputation from any objectionable acts by Amerinet or Amerinet LLC. If Amerinet and Amerinet LLC are permitted to enter into contracts under the name of JPC, the parties to such contracts will naturally ascribe to JPC any ill will that they feel for Amerinet or Amerinet LLC arising out of their contractual relationship.

21. Plaintiff has not ratified any contract made by Amerinet tor Amerinet LLC that was not authorized by plaintiff.

<u>As a First Cause of Action</u>

22. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21, above, as if fully set forth herein.

23. There is a ripe and justiciable controversy between JPC and Amerinet and

Amerinet LLC as to whether or not JPC sold the names "JPC" and "Joint Purchasing Corporation" to Vector in the Purchase Agreement and whether or not Amerinet and Amerinet LLC are entitled to use the name "JPC" and "Joint Purchasing Corporation" to enter into new contracts with suppliers or others to extend or replace the Supplier Agreements transferred in the Purchase Agreement.

24. The misuse of JPC's name by Amerinet and Amerinet LLC is a continuing wrong, and a judicial declaration of the rights of the parties is necessary to guide the parties' future conduct.

25. By reason of the foregoing, JPC requests a declaration pursuant to C.P.L.R. 3001 that JPC did not sell or transfer to Vector the names "JPC" or "Joint Purchasing Corporation" in the Purchase Agreement and that Amerinet and Amerinet LLC do not have any right to use the JPC name to enter into new contracts with suppliers to extend or replace the Supplier Agreements transferred in the Purchase Agreement.

<u>As a Second Cause of Action</u>

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24, above, as if fully set forth herein.

27. Defendants have misappropriated the name and goodwill of JPC by using the JPC name in a manner that is not authorized in the Purchase Agreement and by entering into contracts in the name of JPC without compensation to JPC.

28. Plaintiff is entitled to damages in an amount to be determined at trial for the improper use by Amerinet or Amerinet LLC of JPC's name, including, without limitation, all contract administration fees received by Amerinet and Amerinet LLC as a result of such use.

As a Third Cause of Action

29. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27, above, as if fully set forth herein.

30. Defendants have breached the Purchase Agreement.

31. Plaintiff is entitled to an award of damages in an amount to be determined at trial.

As a Fourth Cause of Action

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30, above, as if fully set forth herein.

33. Plaintiff lacks an adequate remedy at law.

As a Fifth Cause of Action

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30, above, as if fully set forth herein.

35. Defendants have been unjustly enriched.

WHEREFORE, plaintiff Joint Purchasing Corporation demands judgment against defendants Amerinet, Inc. and Amerinet Group Purchasing LLC, and each of them, as follows:

A. For a declaration pursuant to C.P.L.R. 3001 that JPC did not sell the names "JPC" or "Joint Purchasing Corporation" to Vector in the Purchase Agreement and that defendants are not allowed to enter into new contracts with suppliers to extend or replace the Supplier Agreements transferred in the Purchase Agreement;

B. For an award of damages in an amount to be determined at trial;

C. For an order enjoining defendants from entering into any contract or other

legal obligation in the name of JPC;

D. For the costs and disbursements of this action; and

E. For such other and further relief which to the Court seems just and proper.

Dated: February 23, 2007

ARTHUR R. LEHMAN, L.L.C.

By ______________________
Arthur R. Lehman
52 Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 697-2715
Facsimile: (212) 697-2773
Email: arthur@lehmanlawyer.com

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
02/28/2007
Log Number 511992845

**TO:** AMERINET INC
2060 CRAIGSHIRE
ST LOUIS, MO, 63146

**RE:** **Process Served in Delaware**

**FOR:** Amerinet, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Joint Purchasing Corporation, Pltf. vs. Amerinet, Inc. and Amerinet Group Purchasing LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | New York County, Supreme Court - State of New York, NY<br>Case # 102622/07 |
| **NATURE OF ACTION:** | Defendants have misappropriated the name and goodwill of JPC by using the name in a manner that is not authorized in the Purchase Agreement and by entering into contracts without compensation to JPC. |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/28/2007 at 13:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Arthur R. Lehman<br>Arthur R. Lehman L.L.C.<br>52 Vanderbilt Avenue<br>New York, NY, 10017<br>212-697-2715 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, 798117956519 |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Scott LaScala |
| **ADDRESS:** | 1209 Orange Street<br>Wilmington, DE, 19801 |
| **TELEPHONE:** | 302-658-7581 |



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only, not of its contents.

STATE OF NEW YORK COUNTY OF NEW YORK Index No. 102622/07

Calendar No.

JOINT PURCHASING CORP

Plaintiff(s) Petitioner(s)

*against*

AMERINET, INC

Defendant)s) Respondent(s)

**AFFIDAVIT OF SERVICE**

STATE OF DELAWARE, COUNTY OF: NEW CASTLE ss.:

The undersigned, being sworn, says: Deponent is not a party herein, is over 18 years of age and resides at Wilmington, DE

On 2/28/07 at 1:30 PM .M., at C/O THE CORPORATION TRUST CO. 1209 ORANGE ST. WILMINGTON, DE

deponent served the within

- ☒ summons and complaint
- ☐ subpoena duces tecum
- ☐ citation

on AMERINET, INC ☒ defendant ☐ witness ☐ respondent hereinafter called the recipient therein named

INDIVIDUAL 1. ☐ by delivering a true copy *of each* to said recipient personally; deponent knew the person so served to be the person described as said recipient therein.

CORPORATION 2 ☒ a DELAWARE corporation, by delivering thereat a true *copy of each* to SCOTT LASCALA personally, deponent knew said corporation so served to be the corporation, described in same as said recipient and knew said individual to be thereof

SUITABLE AGE PERSON 3. ☐ by delivering thereat a true copy *of each* to a person of suitable age and discretion. Said premises is recipient's ☐ actual place of business ☐ dwelling place ☐ usual place of abode within the state.

AFFIXING TO DOOR, ETC. 4. ☐ by affixing a true copy of *each* to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place ☐ usual place of abode within the state. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there

Deponent talked to at said premises who stated that recipient ☐ lived ☐ worked there.

MAILING TO RESIDENCE USE WITH 3 OR 4 5A ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to recipient at recipient's last known residence, at and deposited said envelope in an official depository under exclusive care and custody of the U.S. Postal Service within New York State.

MAILING TO BUSINESS USE WITH 3 OR 4 5B ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly addressed to recipient at recipient's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient.

DESCRIPTION ☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☒ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100- 130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☒ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

☐ Other identifying features:

WITNESS FEES ☐ $ the authorizing traveling expenses and one days' witness fee: ☐ was paid (tendered) to the recipient ☐ was mailed to the witness with subpeona copy.

MILITARY SERVICE ☐ I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient *wore* ordinary *civilian clothes and no military* uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Sworn to before me on 2/28/07

OFFICIAL SEAL
KEVIN DUNN
NOTARY PUBLIC - DELAWARE
NEW CASTLE COUNTY
My Commission Expires November 23,2010

License No.

DENORRIS BRITT

[redacted]

COUNTY OF NEW YORK

JOINT PURCHASING CORPORATION

Plaintiff(s)

- against -

AMERINET, INC. ET ANO

Defendant(s)

Index #: 102622/07

Purchased: February 26, 2007
Date Filed:

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK ss:

DAVID GOLDBERG BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on March 1, 2007 at 10:45 AM at

BY CT CORPORATION SYSTEM
111 8TH AVENUE
NEW YORK, NY10011

deponent served the within true copy of the SUMMONS & COMPLAINT on AMERINET GROUP PURCHASING LLC, the defendant/respondent therein named,

LIMITED LIABILITY COMPANY

by delivering thereat a true copy of each to MS. ELENA BOU personally, deponent knew said limited liability company so served to be the limited liability company described in said SUMMONS & COMPLAINT as said defendant/respondent and knew said individual to be the PROCESS CLERK thereof.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|---|---|---|---|---|---|
| FEMALE | WHITE | BLACK | 30 | 5'5 | 130 |

The Summons Served had endorsed thereon the Index number and date of filing.

FILED
MAR -7 2007
NEW YORK
COUNTY CLERK'S OFFICE

Sworn to me on: March 1, 2007

Linda Forman
Notary Public, State of New York
No. 01FO5031305
Qualified in New York County
Commission Expires August 1, 2010

Robin M. Forman
Notary Public, State of New York
No. 01FO6125415
Qualified in New York County
Commission Expires April 18, 2009

Stuart J. Forman
Notary Public State of New York
No 31-4828240
Qualified in New York County
Commission Expires June 30, 2007

DAVID GOLDBERG
License #: 916033
Docket #: 464860