# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,

Plaintiffs,

-against-

AMERINET, INC.; AMERINET GROUP PURCHASING LLC; VECTOR HEALTHSYSTEMS, INC.; and GENERAL ELECTRIC COMPANY,

Defendants.

---------------------------------------------------------------x

Case No. 07-CV-2298(JGK)(KNF)

AFFIRMATION IN OPPOSITION TO MOTION TO DISMISS ACTION OR TRANSFER ACTION TO RHODE ISLAND

ARTHUR R. LEHMAN, affirms as follows under penalty of perjury:

1. I am an attorney licensed to practice law in the State of New York and am a principal in the law firm of Arthur R. Lehman, L.L.C., counsel to plaintiffs in the above captioned action. I respectfully submit this affirmation in opposition to the motion by defendants Amerinet, Inc. and Amerinet Group Purchasing LLC to dismiss plaintiffs' First Amended Complaint, or, in the alternative, to transfer this case to the District of Rhode Island, and in support of plaintiffs' cross-motion to enjoin the movants from prosecuting the Rhode Island action. I have represented plaintiffs since the beginning of their dispute with the movants, and have personal knowledge of the facts set forth in this affidavit, and would testify competently to them if called as a witness at trial.

2. I commenced this action by filing a summons and complaint in the Supreme Court of the State of New York, New York County, in an action entitled *Joint Purchasing Corporation v. Amerinet, Inc. and Amerinet Group Purchasing, LLC*, Index No.

102622/07, on February 26, 2007. I filed plaintiffs' First Amended Complaint in the Supreme Court, New York County on March 16, 2007, a copy of which is attached hereto as Exhibit A.

3. I attach hereto as Exhibit B copies of records that I downloaded from the web site maintained by the New York Department of State that indicate that Amerinet Group Purchasing LLC and Vector Healthsystems, Inc. have qualified to do business in the State of New York.

4. I attach hereto as Exhibit C a copy a copy of a record that I downloaded from the web site maintained by the New York Department of State that indicates that defendant General Electric Company is a New York corporation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 19, 2007.

ARTHUR R. LEHMAN

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------x

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,

Plaintiffs,

-against-

AMERINET, INC.; AMERINET GROUP PURCHASING LLC; VECTOR HEALTHSYSTEMS, INC.; and GENERAL ELECTRIC COMPANY,

Defendants.

---------------------------------------------------------------x

Index No. 102622/07

SUPPLEMENTAL SUMMONS

Date Index No
Purchased: 2/26/07

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to serve upon plaintiffs' attorneys an answer to the amended complaint in this action within twenty days after the service of this summons, exclusive of the day of service, or within thirty days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

New York County is designated as the venue of this action based on the location of the principal office of Joint Purchasing Corporation, 11 Penn Plaza, New York, New York.

Dated: New York, New York
March 15, 2007

ARTHUR R. LEHMAN, L.L.C.

By [signature]
Arthur R. Lehman
Attorneys for Plaintiffs
52 Vanderbilt Avenue
New York, New York 10017
Telephone(212) 697-2715
Facsimile (212) 697-2773

TO: Amerinet, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

Amerinet Group Purchasing LLC
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

Vector Healthsystems, Inc.
c/o CT Corporation System
111 Eighth Avenue
New York, New York 10011

General Electric Company
c/o Secretary of State of
the State of New York
41 State Street
Albany, New York 12231

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,

Plaintiffs,

-against-

AMERINET, INC.; AMERINET GROUP PURCHASING LLC; VECTOR HEALTHSYSTEMS, INC.; and GENERAL ELECTRIC COMPANY,

Defendants.

---

Index No. 102622/07

FIRST AMENDED COMPLAINT

Plaintiffs Joint Purchasing Corporation and Creative Source Concepts, Inc., by their undersigned attorneys, as and for their first amended complaint against defendants Amerinet, Inc.; Amerinet Group Purchasing LLC; Vector Healthsystems, Inc.; and General Electric Company (as interpleader defendant only), allege as follows:

The Parties

1. Plaintiff Joint Purchasing Corporation ("JPC") is a not-for-profit corporation organized under the laws of the State of New York. In March 2004, JPC was a group purchasing organization serving a number of not-for-profit healthcare providers throughout the United States.

2. Plaintiff Creative Source Concepts, Inc. ("CSC") is a corporation organized under the laws of the State of New Jersey. In March 2004, CSC was a wholly-owned subsidiary of JPC and was also a group purchasing organization.

3. On information and belief, defendant Amerinet, Inc. ("Amerinet") is a

corporation organized under the laws of the State of Delaware and is a group purchasing organization serving a number of not-for-profit healthcare providers throughout the United States, including New York, through contracts with suppliers and vendors of healthcare-related goods and services, including suppliers and vendors in New York.

4. On information and belief, defendant Amerinet Group Purchasing LLC ("Amerinet LLC") is a Delaware limited liability company authorized to do business in the State of New York and is a group purchasing organization.

5. On information and belief, defendant Vector Healthsystems, Inc. ("Vector") is a corporation organized under the laws of the State of Rhode Island, is authorized to do business in the State of New York, and is or was a group purchasing organization. Amerinet LLC or Amerinet is the successor in interest to Vector.

6. On information and belief, interpleader defendant General Electric Company is organized under the laws of the State of New York and operates a division under the names GE Medical Systems or GE Healthcare ("GE").

<u>Factual Background</u>

7. In March 2004, JPC, CSC, and Vector entered into an Asset Purchase Agreement dated March 11, 2004 (the "Purchase Agreement"). Pursuant to the Purchase Agreement, JPC and CSC sold to Vector their then-existing participation contracts, agreements, and arrangements (referred to as "Participant Agreements") with those entities (typically, hospitals and other healthcare providers) that made purchases under contracts that JPC and CSC maintained with suppliers and vendors of healthcare-related products and services, together with their contracts, agreements, and arrangements with such suppliers and vendors, including

interpleader defendant GE (referred to as "Supplier Agreements"). The Participant Agreements and Supplier Agreements are referred to in the Purchase Agreement as the "Assumed Agreements."

8. The names "JPC" or "Joint Purchasing Corporation" or "CSC" or "Creative Source Concepts" are not identified in the Purchase Agreement as assets that were sold to Vector, and were not in fact sold to Vector.

9. JPC calculated the purchase price for the assets sold to Vector in the Purchase Agreement on the assumption that the valuable names "JPC" and "Joint Purchasing Corporation" and "CSC" and "Creative Source Concepts" were not being sold. If JPC and CSC had intended to sell the names "JPC" and "Joint Purchasing Corporation" and "CSC" and "Creative Source Concepts" to Vector, they would have demanded a higher purchase price.

10. The Purchase Agreement and related closing documents contemplate that JPC and CSC retain their corporate names. For example,

a. The Purchase Agreement provides, at section 11.2, that JPC and CSC refrain from competing with Vector for a two year period, after which they are free to re-enter the group purchasing business, presumably in their own names.

b. The Purchase Agreement provides, at section 11.2, that from and after the closing date, JPC may continue to conduct necessary activities related to group purchasing activities as provided in certain ancillary agreements and in connection with certain educational activities, presumably in its own name.

c. The Purchase Agreement provides, at section 11.6, that after closing, JPC and CSC shall maintain their corporate existence and remain in good standing. The

Purchase Agreement does not require that JPC or CSC change their names after closing.

d. In connection with the closing, JPC and CSC issued a Bill of Sale and Assignment to Vector conveying the assets sold to Vector. The Bill of Sale does not identify the names "JPC" or "Joint Purchasing Corporation" or "CSC" or "Creative Source Concepts" as transferred assets.

e. In connection with the closing, JPC, CSC and Vector entered into a Domain Name Licensing Agreement Dated April 23, 2004 pursuant to which JPC and CSC licensed the domain names "jpc.org," "jpc.net," and "jointpurchasingcorp.org" to Vector. The agreement provides, at section 4, "Licensee [Vector] recognizes and acknowledges that Licensor [JPC] is the owner of the Names and all goodwill in association therewith."

11. Certain of the Supplier Agreements required the consent by the supplier or vendor to the assignment or sale of such agreement. Accordingly, JPC and CSC agreed that they would use their best efforts to obtain such consents or approvals to the assignment of the Supplier Agreements to Vector.

12. The Purchase Agreement provided that JPC and Vector would enter into a Management Services Agreement that would address the services to be performed by Vector with respect to the Assumed Agreements. Accordingly, JPC and Vector entered into a Management Services Agreement dated March 11, 2004 (the "Management Agreement").

13. The Purchase Agreement provided that CSC and Vector would enter into a Services Agreement that would address the services to be performed by Vector with respect to the Assumed Agreements. Accordingly, CSC and Vector entered into a Services Agreement dated March 11, 2004 (the "Services Agreement").

14. Pursuant to the Management Agreement and Services Agreement, Vector was permitted to perform the services on behalf of JPC and CSC under the Supplier Agreements only until consent was received from such supplier to assign such Supplier Agreement to Vector (at which time Vector would become the direct contracting party) or the expiration of the terms of such Supplier Agreements (at which time Vector would have to commence negotiations with the supplier in its own name for a new contract). In that regard, the Management Agreement states,

> "WHEREAS, the parties contemplate requesting the consent of such third parties after the Closing (as defined in the Purchase Agreement), however, prior to the obtaining of such consent, Manager [Vector] may provide services as requested by JPC until such consents are obtained or the term of such agreements expire...."

In addition, the Services Agreement states:

> "WHEREAS, the parties contemplate requesting the consent of such third parties after the Closing (as defined in the Purchase Agreement), however, prior to the obtaining of such consent, Manager [Vector] may provide services as requested by CSC until such consents are obtained or the term of such agreements expire...."

15. The Management Agreement provided that Amerinet would service the existing Assumed Agreements on behalf of JPC and would receive in exchange the contract administration fees to which JPC was entitled under the Supplier Agreements. The Management Agreement addresses the rights and obligations of the parties only with respect to those Supplier Agreements that existed as of the date of the Purchase Agreement and were sold under the terms of the Purchase Agreement. Neither the Purchase Agreement nor the Management Agreement nor the Services Agreement gives any right to Vector to modify any existing contracts or enter into new contracts with suppliers in the name of JPC or CSC after the expiration of the Supplier

Agreements that were sold to Vector under the Purchase Agreement.

16. On information and belief, pursuant to agreement between Vector and Amerinet LLC dated April 10, 2006, all of the stock or assets of Vector were purchased by Amerinet LLC and the Management Agreement and Services Agreement were assigned by Vector to Amerinet LLC, and Amerinet LLC agreed to perform all of the obligations of Vector under the Management Agreement and Services Agreement. Although Amerinet LLC did not inform JPC or CSC that it further assigned the aforementioned agreements to Amerinet, it now appears that Amerinet LLC has assigned all of the aforementioned agreements to Amerinet. By virtue of the purchase and sale, Amerinet or Amerinet LLC succeeded to all of the rights and obligations of Vector under the Purchase Agreement.

17. Certain of the Supplier Agreements, including certain contracts between JPC, CSC, and GE, expired by their terms after the closing under the Purchase Agreement before consent to their assignment to Vector could be obtained. On information and belief, Amerinet, Amerinet LLC, or Vector did not initiate negotiations with the suppliers to replace the expired Supplier Agreements with new agreements between Vector, Amerinet, or Amerinet LLC. Instead, in order to conceal their involvement from the suppliers, Vector, Amerinet, and Amerinet LLC modified existing contracts or entered into new contracts with suppliers, including GE, in the name of JPC or CSC instead of Amerinet, Amerinet LLC, or Vector. Vector, Amerinet, and Amerinet LLC were not authorized by JPC or CSC to modify existing contracts or enter into such contracts, and JPC and CSC had no knowledge that Vector, Amerinet, or Amerinet LLC had done so.

18. For example, on information and belief, Vector, Amerinet, or Amerinet

LLC entered into a new contract or modified a Supplier Agreement with GE after the closing under the Purchase Agreement. As a result, GE has transferred to JPC (instead of Amerinet, Amerinet LLC, or Vector) certain contract administration fees which appear to be owed under such unauthorized contracts in the mistaken belief that JPC is the party with which GE had contracted. These funds are the subject of plaintiffs' interpleader claim below.

19. As another example, on information and belief, in or about August 2006 Amerinet or Amerinet LLC entered into a new supplier agreement with Amicas, Inc. for radiology and imaging products. JPC had no previous supplier relationship with Amicas, Inc. and did not transfer any agreement with Amicas, Inc. as one of the Supplier Agreements under the Purchase Agreement.

20. JPC and CSC have objected to the acts of Amerinet, Amerinet LLC, and Vector, but Amerinet, Amerinet LLC, and Vector have taken the position that JPC and CSC sold the names "JPC" and "Joint Purchasing Corporation" and "CSC" and "Creative Source Concepts" to Vector in the Purchase Agreement, and Amerinet and Amerinet LLC, as successor to Vector, now have unfettered rights to enter into contracts in the name of JPC or CSC without knowledge or permission of JPC or CSC.

21. The acts of Amerinet, Amerinet LLC, and Vector have subjected JPC to the possibility of conflicting claims to the contract administration fees paid to JPC, including fees paid by GE, in the mistaken belief that JPC, and not Amerinet, Amerinet LLC, or Vector, is the actual contracting party. For example, if JPC delivers to Amerinet or Amerinet LLC the funds that JPC received from GE, JPC could be subject to a claim by GE if GE accidentally transferred to JPC more than it owed under its contract with Amerinet, Amerinet LLC, or Vector and seeks

to recover such amounts from JPC or if GE claims that it transferred the GE funds under a mistake.

22. The acts of Amerinet, Amerinet LLC, and Vector have subjected JPC and CSC to the possibility of lawsuits and claims by parties who believe that they have entered into contracts with JPC or CSC, when in fact they have entered into contracts with Amerinet, Amerinet LLC, or Vector who were misleadingly using the name of JPC or CSC. JPC and CSC are without knowledge of the contracts entered into by Amerinet, Amerinet LLC, and Vector, and cannot inform the contracting parties that Amerinet, Amerinet LLC, and Vector lack authority to enter into such contracts in the name of JPC or CSC.

23. The acts of Amerinet, Amerinet LLC, and Vector have damaged the ability of JPC and CSC to engage in the group purchasing business in the future if it so chooses. Typically, suppliers and vendors have a single contract with a group purchasing organization for a particular product or service. If JPC or CSC attempts to negotiate a contract with a supplier or vendor that has entered into a contract with Amerinet, Amerinet LLC, or Vector under the name of JPC or CSC, such supplier or vendor will not enter into another contract with JPC or CSC.

24. The acts of Amerinet, Amerinet LLC, and Vector have increased the risk of damage to the reputation of JPC and CSC from any objectionable acts by Amerinet, Amerinet LLC, or Vector. If Amerinet, Amerinet LLC, and Vector are permitted to enter into contracts under the name of JPC or CSC, the parties to such contracts will naturally ascribe to JPC or CSC any ill will that they feel for Amerinet, Amerinet LLC, or Vector arising out of their contractual relationship.

25. Plaintiffs have not ratified any contract made by Amerinet, Amerinet LLC,

or Vector that was not authorized by JPC or CSC.

<u>As a First Cause of Action</u>
(against Amerinet, Amerinet LLC, and Vector)

26. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 25, above, as if fully set forth herein.

27. There is a ripe and justiciable controversy between JPC and CSC, on the one hand, and Amerinet, Amerinet LLC, and Vector, on the other hand, as to whether or not JPC and CSC sold the names "JPC" and "Joint Purchasing Corporation" and "CSC" and "Creative Source Concepts" to Vector in the Purchase Agreement and whether or not Amerinet, Amerinet LLC, and Vector were and are entitled to use the name "JPC" and "Joint Purchasing Corporation" and "CSC" and "Creative Source Concepts" to enter into new contracts with suppliers or others or to modify, extend or replace the Supplier Agreements transferred in the Purchase Agreement.

28. The misuse of plaintiffs' names by Amerinet, Amerinet LLC, and Vector is a continuing wrong, and a judicial declaration of the rights of the parties is necessary to guide the parties' future conduct.

29. By reason of the foregoing, JPC and CSC request a declaration pursuant to C.P.L.R. 3001 that JPC and CSC did not sell or transfer to Vector the names "JPC" or "Joint Purchasing Corporation" or "CSC" or "Creative Source Concepts" in the Purchase Agreement and that Amerinet, Amerinet LLC, and Vector did not and do not have any right to use the JPC or CSC names to enter into new contracts with suppliers or to modify, extend or replace the Supplier Agreements transferred in the Purchase Agreement in the names of JPC or CSC.

<u>As a Second Cause of Action</u>
(against Amerinet, Amerinet LLC, and Vector)

30. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 28, above, as if fully set forth herein.

31. Defendants Amerinet, Amerinet LLC, and Vector have misappropriated the name and goodwill of JPC and CSC by using the JPC and CSC names in a manner that is not authorized in the Purchase Agreement and by entering into contracts in the name of JPC and CSC without compensation to JPC or CSC.

32. JPC and CSC are entitled to damages in an amount to be determined at trial for the improper use by Amerinet, Amerinet LLC, and Vector of JPC's or CSC's name, including, without limitation, all contract administration fees received by Amerinet, Amerinet LLC, and Vector as a result of such wrongful use.

<u>As a Third Cause of Action</u>
(against Amerinet, Amerinet LLC, and Vector)

33. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 31, above, as if fully set forth herein.

34. Defendants Amerinet, Amerinet LLC, and Vector have breached the Purchase Agreement.

35. Plaintiffs are entitled to an award of damages in an amount to be determined at trial.

<u>As a Fourth Cause of Action</u>
(against Amerinet, Amerinet LLC, and Vector)

36. Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 34, above, as if fully set forth herein.

37. Plaintiffs lack an adequate remedy at law.

As a Fifth Cause of Action
(against Amerinet, Amerinet LLC, and Vector)

38. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34, above, as if fully set forth herein.

39. Defendants Amerinet, Amerinet LLC, and Vector have been unjustly enriched.

As a Sixth Cause of Action
(against Amerinet, Amerinet LLC, and Vector)

40. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34, above, as if fully set forth herein.

41. At the time of the Purchase Agreement, JPC was a Manager and Member of the following limited liability companies: Coastal Cooperative of New Jersey, LLC; Cooperative Healthcare Services of South Jersey, L.L.C.; and Cardinal Health Initiatives, LLC. (the "Companies").

42. At the time of the Purchase Agreement, JPC was a Member of Mid-Atlantic Group Network of Shared Services, Inc., a New York not-for-profit corporation ("Magnet").

43. In the Management Agreement, JPC engaged Vector to service JPC's management obligations under the terms of management of each of the Companies' operating agreements and the Magnet governing documents. In exchange, JPC assigned to Vector any rights of JPC as a member or manager of such Companies and Magnet.

44. In the Management Agreement, Vector undertook administrative duties, and duties to negotiate contracts on behalf of the Companies, report to JPC and monitor fees paid by vendors, develop annual business plans, provide audit rights to JPC, and perform or satisfy all duties and obligations of JPC under the Magnet governing documents.

45. In the Management Agreement, Vector agreed to maintain, develop, and grow the Magnet group purchasing contracts during the term of the Management Agreement.

46. Amerinet, Amerinet LLC, and Vector breached the Management Agreement in that, among other things, they failed to maintain, develop, or grow the Magnet group purchasing contracts; failed to develop annual business plans for the Companies; failed to promote the business and interests of the Companies; failed to provide full audit rights to JPC; and served conflicting interests by inducing potential participants in Magnet contracts to participate in Amerinet contracts instead of Magnet contracts.

47. The Management Agreement contains an implied covenant of good faith and fair dealing pursuant to which Vector agreed that it would not engage in any conduct that served to deprive JPC of the benefit of its bargain. The acts set forth above constitute a violation by Amerinet, Amerinet LLC, and Vector of the covenant of good faith and fair dealing.

48. By reason of the foregoing, JPC has been damaged in an amount of at least $75,000.00.

<u>As a Seventh Cause of Action for Interpleader</u>
(against Amerinet, Amerinet LLC, Vector, and GE)

49. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 34, above, as if fully set forth herein.

50. Between November 2006 and February 2007, JPC has received electronic funds transfers from GE in the amount of $406,528.34 (the "GE Funds").

51. Amerinet claims that it is entitled to the GE Funds by virtue of the Purchase Agreement.

52. JPC is unable to ascertain whether the GE Funds relate to Supplier Contracts subject to the Purchase Agreement, in which case Amerinet would be entitled to the GE Funds. JPC has requested that Amerinet provide copies of the contracts to which the GE Funds relate, but Amerinet has failed and refused to do so.

53. If the GE Funds do not relate to Supplier Contracts subject to the Purchase Agreement, but instead relate to contracts that Amerinet, Amerinet LLC, or Vector wrongfully entered into in the name of JPC without authority, then GE may be expected to make a claim to the GE Funds.

54. JPC is ignorant of the respective rights of the defendants and cannot determine, without hazard to itself, to which of the claimants the GE Funds belong.

55. JPC has no claim to the GE Funds and is ready and willing to deliver the GE Funds to such persons as the Court shall direct.

56. This claim for interpleader is not brought by collusion with any of the defendants.

WHEREFORE, plaintiffs Joint Purchasing Corporation and Creative Source Concepts, Inc. demand judgment against defendants Amerinet, Inc.; Amerinet Group Purchasing LLC; Vector Healthsystems, Inc.; and General Electric Company, and each of them, as follows:

A. For a declaration pursuant to C.P.L.R. 3001 that JPC and CSC did not sell

the names "JPC" or "Joint Purchasing Corporation" or "CSC" or "Creative Source Concepts" to Vector in the Purchase Agreement and that defendants Amerinet, Amerinet LLC, and Vector are not allowed to enter into new contracts with suppliers to modify, extend or replace the Supplier Agreements transferred in the Purchase Agreement;

B. For an award of damages in an amount to be determined at trial;

C. For an order enjoining defendants Amerinet, Amerinet LLC, and Vector from entering into any contract or other legal obligation in the name of JPC or CSC;

D. For judgment pursuant to C.P.L.R. 1006 that

1. the defendants and each of them be required to interplead together concerning their respective claims to the GE Funds;

2. the Court authorize some person to receive the GE Funds pending the determination of this action;

3. that upon the delivery of the GE Funds to such receiver designated by the Court, JPC and CSC be discharged from all liability to the defendants or any of them in relation thereto;

E. For the costs and disbursements of this action; and

F. For such other and further relief which to the Court seems just and proper.

Dated: March 15, 2007

ARTHUR R. LEHMAN, L.L.C.

By [signature]

Arthur R. Lehman
52 Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 697-2715
Facsimile: (212) 697-2773
Email: arthur@lehmanlawyer.com

EXHIBIT B

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: VECTOR HEALTHSYSTEMS, INC.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | VECTOR HEALTHSYSTEMS, INC. |
| **Initial DOS Filing Date:** | APRIL 26, 2004 |
| **County:** | NEW YORK |
| **Jurisdiction:** | RHODE ISLAND |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

VECTOR HEALTHSYSTEMS, INC.
10 CHARLES STREET
PROVIDENCE, RHODE ISLAND, 02904

**Chairman or Chief Executive Officer**

GERALD G MCCLURE, CEO
10 CHARLES STREET
PROVIDENCE, RHODE ISLAND, 02904

**Principal Executive Office**

VECTOR HEALTHSYSTEMS, INC.
10 CHARLES STREET
PROVIDENCE, RHODE ISLAND, 02904

**Registered Agent**

C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

NOTE: New York State does not issue organizational identification numbers.

Search Results New Search

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: AMERINET GROUP PURCHASING LLC

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | AMERINET GROUP PURCHASING LLC |
| **Initial DOS Filing Date:** | MAY 31, 2006 |
| **County:** | NEW YORK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

C/O CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

**Registered Agent**

CT CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

NOTE: New York State does not issue organizational identification numbers.

Search Results New Search

Division of Corporations, State Records and UCC Home Page NYS Department of State Home Page

EXHIBIT C

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: GENERAL ELECTRIC COMPANY

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | GENERAL ELECTRIC COMPANY |
| **Initial DOS Filing Date:** | |
| **County:** | SCHENECTADY |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

GENERAL ELECTRIC COMPANY
3135 EASTON TPKE
FAIRFIELD, CONNECTICUT, 06431

**Chairman or Chief Executive Officer**

JEFFREY R IMMELT
3135 EASTON TPKE
FAIRFIELD, CONNECTICUT, 06431

**Principal Executive Office**

GENERAL ELECTRIC COMPANY
3135 EASTON TURNPIKE
FAIRFIELD, CONNECTICUT, 06431

**Registered Agent**

NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results New Search

Division of Corporations, State Records and UCC Home Page NYS Department of State Home Page