# EXHIBIT 5

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,

Plaintiffs,

-against-

AMERINET, INC.; AMERINET GROUP PURCHASING LLC; VECTOR HEALTHSYSTEMS, INC.; and GENERAL ELECTRIC COMPANY,

Defendants.

--------------------------------------------------------------x

Case No. 07-CV-2298(JGK)(KNF)

AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS ACTION OR TRANSFER ACTION TO RHODE ISLAND

STATE OF NEW YORK

COUNTY OF NEW YORK

LEE MERMELSTEIN, being duly sworn, deposes and says:

1. I am a principal in the law firm of Jacobson, Mermelstein & Squire, LLP. I respectfully submit this affidavit in opposition to the motion by defendants Amerinet, Inc. and Amerinet Group Purchasing LLC (collectively, "Amerinet") to dismiss plaintiffs' First Amended Complaint, or, in the alternative, to transfer this case to the District of Rhode Island. I have personal knowledge of the facts set forth in this affidavit, and would testify competently to them if called as a witness at trial. I am a resident of New York, and expect to be a witness for plaintiffs in this action.

2. This action concerns in part the interpretation of an Asset Purchase Agreement dated March 11, 2004, and related documents, among the plaintiffs and defendant Vector Healthsystems, Inc. ("Vector"), a group purchasing organization that was a stockholder

of Amerinet and was purchased by Amerinet in 2006. My firm was counsel to plaintiffs in connection with drafting and negotiating the Asset Purchase Agreement and the other documents executed in connection with the transaction, and I was personally involved in the negotiation, drafting, and execution of the Asset Purchase Agreement and related documents.

3. I have read the moving affidavit of John F. Bolton, Esq., counsel to the movants, sworn to April 6, 2007 (the "Bolton Affidavit"), submitted in support of their motion, and the movants' moving memorandum of law dated April 6, 2007 ("Movants' Memorandum"). To my knowledge, neither Mr. Bolton nor any attorney from his law firm was involved in any aspect of the negotiation, drafting, or execution of the Asset Purchase Agreement, and I do not believe that he has any first-hand knowledge about these subjects. That circumstance might explain why the movants erroneously state throughout their moving papers that the Asset Purchase Agreement was negotiated and entered into in Rhode Island. See, for example, Bolton Affidavit., at ¶¶ 5 and 9, and Movants' Memorandum at pp. 1, 5, 9, and 11. In fact, the Asset Purchase Agreement was negotiated and executed in the same manner as most other transactional documents were in 2004 and today. We attorneys involved in the transaction generally remained in our respective offices, and communicated with each other through use of telephone, fax, overnight courier, and email.

4. One of the first meetings between the principals of JPC and Vector concerning the subject transaction took place in my office in Manhattan in 2003. After the parties agreed to explore the possibility of engaging in a transaction in greater detail, they signed a letter of intent; plaintiffs signed in New York, and I understand that Vector signed in Rhode Island. After the parties signed the letter of intent, I communicated frequently with Sandra

Mack, Esq., of the Rhode Island law firm of Hinckley, Allen & Snyder LLP, counsel to Vector. We negotiated the agreements on the telephone (I was in New York City and she was in Providence); in fact, I never traveled to Rhode Island in connection with this transaction. Ms. Mack and I generated and revised term sheets, drafts, and final documents, and transmitted them to each other by fax and email and sent each other documents by overnight courier.

5. The Asset Purchase Agreement contains an express provision, ¶16.15, which permits the parties to sign the agreements in counterparts. I attach the signature pages as Exhibit A. The plaintiffs, by Wayne A. Thompson and Edward Cienki, signed the Asset Purchase Agreement in New York. I sent their signature page to Vector's counsel, and Vector's counsel supplied the signature page on which Vector executed the Asset Purchase Agreement. There was no formal physical "closing" of the transaction in Rhode Island or anywhere else at which the parties appeared and executed the documents in each others' presence.

6. Plaintiff Joint Purchasing Corporation is a New York not-for-profit corporation. Among its current activities, JPC, directly and through its affiliated foundation, offers educational programs in New York, in some cases together with Local 1199, related to issues involving health care and an aging population. In order to consummate the transactions described in the Asset Purchase Agreement, JPC had to obtain consent by the New York State Attorney General, as required by law. Accordingly, after the parties signed the Asset Purchase Agreement in March 2004, I prepared a request for approval of the transaction that contained the signed Asset Purchase Agreement, an independent valuation of the assets transferred,[1] and

[1] The valuation was prepared by Cain Brothers, a New York City investment banking firm. The Cain Brothers report on the valuation of the assets transferred did not contemplate that the names "JPC" or "CSC" were assets that were being transferred, a central issue in this case. Accordingly, plaintiffs intend to call Cain Brothers at trial.

related documents. I submitted this request to the New York Attorney General, Charities Bureau, for internal review. After receiving approval of the Charities Bureau, I submitted an application to the Supreme Court of the State of New York for an order permitting the transaction to close. After receiving judicial permission, the asset purchase transaction closed on April 23, 2004.

7. The movants' argument on this motion rests in part on a claim that the governing law section of the Asset Purchase Agreement provides for exclusive venue of this action in the courts of Rhode Island. My understanding of the Asset Purchase Agreement was that the forum clause was permissive, not mandatory, and that the purpose of the clause was to permit Vector to sue the plaintiffs in Rhode Island if a dispute arose. However, the provision provides that suit "...may be brought" in the state or federal courts in Rhode Island, and I did not understand that to exclude the plaintiffs from bringing an action in any other court of competent jurisdiction. In addition, because plaintiff Joint Purchasing Corporation is a New York not-for-profit corporation, Ms. Mack and I specifically discussed the possibility that a dispute between plaintiffs and Vector could arise that might require the participation of the Office of the Attorney General of New York; in that event, we agreed that the "exclusive jurisdiction" of such proceeding would be New York. See, plaintiffs' accompanying memorandum of law, p. 3, for the text of the Governing Law provision of the Asset Purchase Agreement. Thus, it is clear that when we wanted to make jurisdiction or venue mandatory instead of permissive, we knew how to do so, and provided for exclusive jurisdiction in the case of actions involving the New York Attorney General, and permissive jurisdiction in all other cases.

7. Accordingly, the negotiation, drafting, and execution of the Asset

Purchase Agreement and related documents took place equally in New York and Rhode Island, and not exclusively or predominantly in Rhode Island as argued by the movants. In addition, the forum clause in the Asset Purchase Agreement constituted consent by plaintiffs to jurisdiction in Rhode Island, not an exclusive venue for resolution of any dispute among the parties. Finally, the transaction that is the subject of the parties' dispute has a strong connection to the State of New York, and proceeded only after scrutiny by the New York State Office of Attorney General.

LEE MERMELSTEIN

Sworn to before me this
19th day of April, 2007

Arthur R. Lehman
Notary Public of the State of New York
No. 31-4706652
Qualified in New York County
Commission Expires May 31, 2009

EXHIBIT A

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the 11th day of March 2004.

**BUYER:**

**VECTOR HEALTHSYSTEMS, INC.**

By ______________________
Name:
Title:

**SELLERS:**

**JOINT PURCHASING CORPORATION**

By ______________________
Name: Wayne A. Thompson
Title: President and CEO

**CREATIVE SOURCE CONCEPTS, INC.**

By ______________________
Name: Edward Cienki
Title: President

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the 11th day of March 2004.

**BUYER:**

**VECTOR HEALTHSYSTEMS, INC.**

By [signature]
Name:
Title: Chairman & CEO

**SELLERS:**

**JOINT PURCHASING CORPORATION**

By ______________________________
Name:
Title:

**CREATIVE SOURCE CONCEPTS, INC.**

By______________________________
Name:
Title: