# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

JOINT PURCHASING CORPORATION and CREATIVE SOURCE CONCEPTS, INC.,

Plaintiffs,

-against-

AMERINET, INC.; AMERINET GROUP PURCHASING LLC; VECTOR HEALTHSYSTEMS, INC.; and GENERAL ELECTRIC COMPANY,

Defendants.

---------------------------------------------------------------x

Case No. 07-CV-2298(JGK)(KNF)

REPLY AFFIRMATION IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A STAY

ARTHUR R. LEHMAN, affirms as follows under penalty of perjury:

1. I am an attorney licensed to practice law in the State of New York and am a principal in the law firm of Arthur R. Lehman, L.L.C., counsel to plaintiffs in the above captioned action. I respectfully submit this affirmation in further support of the cross-motion by plaintiffs' to enjoin the movants from prosecuting the Rhode Island action. I have represented plaintiffs since the beginning of their dispute with the defendants, and have personal knowledge of the facts set forth in this affirmation. This affirmation is being submitted separately from the other motion papers because counsel for defendants Amerinet Inc. and Amerinet Group Purchasing LLC (Amerinet") submitted all of the motion papers to the Court before plaintiffs had an opportunity to submit their papers in reply to the opposition papers served by Amerinet to plaintiffs' motion for a stay.

2. In their reply papers submitted in further support of their motion to transfer this case to Rhode Island and in opposition to plaintiffs' motion for a stay, Amerinet

failed to cure the defects in their moving papers. In particular, they have failed to offer any legitimate reason why plaintiffs' choice of forum should be disturbed and have not shown that considerations of the convenience of the parties heavily favors Amerinet. To the contrary, Amerinet has merely shown that Rhode Island might be more convenient for some of the Amerinet witnesses while New York remains more convenient for plaintiffs' witnesses. In the course of argument, however, Amerinet has grossly distorted the procedural history in an unsuccessful attempt to support the new accusation, raised for the first time in Amerinet's reply papers, that plaintiffs engaged in an unseemly race to the courthouse and that this Court should therefore transfer this action to Rhode Island. The purpose of this affirmation is to correct the record.

3. As noted in the parties' earlier papers, Amerinet commenced an arbitration before the American Arbitration Association in Rhode Island in early February 2007. That arbitration was limited to Amerinet's claim under a Management Services Agreement that contained an arbitration clause. Amerinet's predecessor, Vector Healthsystems, Inc., had signed an Asset Purchase Agreement as part of the same transaction in which the Management Services Agreement was signed. However, the Asset Purchase Agreement did not contain an arbitration clause. The plaintiffs submitted an answer and counterclaim in the arbitration proceeding that was limited to claims arising under the Management Services Agreement. Plaintiffs carefully avoided asserting any claim arising under the Asset Purchase Agreement because plaintiffs did not want to submit those claims to arbitration. I attach hereto as Exhibit A a copy of plaintiffs' answer and counterclaims in the arbitration proceeding. As is evident, plaintiffs make no claim under the Asset Purchase Agreement, and the central issue in the action before this Court,

whether or not Amerinet acquired plaintiffs' names in the transaction, was not before the arbitration tribunal. Thus, Mr. Ebert is incorrect in his reply affidavit sworn to May 4, 2007, at paragraph 12, when he states that JPC raised issues relating to the Asset Purchase Agreement in its arbitration counterclaim.

4. Mr. Ebert is also incorrect when he unfairly suggests that I concealed from Amerinet's counsel that I had filed the action in the New York State court. I commenced the New York State action by filing a summons and complaint in the Supreme Court of the State of New York, New York County, in an action entitled *Joint Purchasing Corporation v. Amerinet, Inc. and Amerinet Group Purchasing, LLC*, Index No. 102622/07, on February 26, 2007. Thereafter, I sent the summons and complaint to process servers for delivery to the statutory agents of the defendants. The New York State action summons and complaint were delivered to the statutory agent for Amerinet Inc. on February 28, 2007 and to the statutory agent for Amerinet Group Purchasing LLC on March 1, 2007. I attach as Exhibit B copies of the affidavits of service on those two entities.

5. After service had been made on the Amerinet defendants, I received a telephone call from David Wells, Amerinet's outside counsel. Mr. Wells suggested that the parties discontinue the arbitration and pursue their remedies in court. Mr. Wells and I discussed our respective views of the arbitration process, and were of like mind in our preference for judicial resolution of disputes instead of arbitration. I spoke to my client and obtained approval of Mr. Wells' proposal, and spoke to Mr. Wells on March 7, 2007. I assumed that Mr. Wells knew about the declaratory judgment action filed in New York State because in my experience, the statutory agents send process by overnight courier the same day that they receive it, and

Amerinet had been served the prior week. However, in order to avoid any possible confusion, I expressly disclosed to Mr. Wells that I had filed the New York State action. Mr. Wells and I expressly discussed the future posture of that case and the fact that the Amerinet arbitration claims would become counterclaims in the New York State action.[1] With full knowledge of the existence of the New York State action, Mr. Wells notified the AAA in writing the next day that Amerinet was withdrawing its arbitration claims without prejudice. Thus, the statement by Mr. Ebert, at paragraph 16 of his affidavit, that I did not disclose the pendency of the New York State action to Mr. Wells before reaching agreement to discontinue the arbitration, is completely false.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2007.

/s/ Arthur R. Lehman
ARTHUR R. LEHMAN

---

[1] I was therefore surprised when Amerinet did not assert its counterclaims in the pending New York action, but instead commenced a separate action in Rhode Island. I called Mr. Wells and told him that I was disappointed in his conduct, and that I had understood that his client would participate in the New York State action, not start a new action in Rhode Island.

# EXHIBIT A

**AMERICAN ARBITRATION ASSOCIATION**

---

In the Matter of the Arbitration between: Case No. 11 181 00269 07

AMERINET, INC. ,

Claimant,

And

JOINT PURCHASING CORPORATION, Case Manager: Nicholas W. LaRoche

Respondent.

---

**RESPONSE OF JOINT PURCHASING CORPORATION TO CLAIM, OBJECTION TO JURISDICTION OF ARBITRATOR AND ARBITRABILITY OF CLAIM, AND COUNTERCLAIMS AGAINST CLAIMANT AMERINET, INC.**

Respondent Joint Purchasing Corporation ("JPC"), by its undersigned attorneys, as and for its response to the claim of Amerinet, Inc. ("Amerinet") dated February 1, 2007 (the "Claim"), objection to the jurisdiction of the arbitrator and the arbitrability of the claim, and counterclaims against Amerinet, Inc., states as follows:

**Factual Background and Objection to the Jurisdiction of the Arbitrator and the Arbitrability of the Claim**

1. In March 2004, JPC was a group purchasing organization serving a number of not-for-profit healthcare providers throughout the United States. Vector Healthsystems, Inc. ("Vector") was also a group purchasing organization.

2. JPC and Vector entered into an Asset Purchase Agreement dated March 11, 2004 (the "Purchase Agreement"). Pursuant to the Purchase Agreement, JPC sold to Vector JPC's then-existing participation contracts, agreements, and arrangements (referred to as

"Participation Agreements") with those entities that made purchases under contracts that JPC maintained with its suppliers and vendors, and JPC's contracts, agreements, and arrangements with such suppliers and vendors (referred to as "Supplier Agreements"). The Participation Agreements and Supplier Agreements are referred to in the Purchase Agreement as the "Assumed Agreements."

3. Certain of the Assumed Agreements required the consent to the assignment or sale of such agreement. Accordingly, JPC agreed that it would use its best efforts to obtain such consents or approvals, to the extent necessary, to the assignment of the Assumed Agreements to Vector, and Vector agreed, at section 4.2 of the Purchase Agreement, that until such consent or approval was obtained, Vector would act as JPC's agent "for the sole purpose of obtaining for [JPC] the benefits" under the Assumed Agreements.

4. The Purchase Agreement provided that JPC and Vector would enter into a Management Services Agreement pursuant to which Vector would service JPC's obligations under agreements that JPC had with certain other entities (other than the Assumed Agreements). Accordingly, JPC and Vector entered into a Management Services Agreement dated March 11, 2004 (the "Management Agreement").

5. The Management Agreement provides for settlement of disputes "regarding the application or interpretation of any provision of" the Management Agreement, including either party's "performance or non-performance," by arbitration before the American Arbitration Association. On the other hand, the Purchase Agreement does not contain any provision that subjects to arbitration any disputes arising out of or related to the Purchase Agreement. Thus, this arbitration concerns only those issues that arise under the Management

Agreement.

6. After March 11, 2004, the Management Agreement and Purchase Agreement were assigned by Vector to Amerinet, and Amerinet agreed to perform all of the obligations of Vector under the Management Agreement and Purchase Agreement. Accordingly, JPC will refer to Amerinet as the applicable contracting party below.

7. The Management Agreement provides, at section 3.08, that Amerinet "shall also satisfy or perform when due any and all obligations, and assume any and all rights of JPC under the ... supplier, group purchasing and other agreements listed on Exhibit B." The parties did not list the relevant agreements in Exhibit B. Instead, the Management Agreement provides:

> "EXHIBIT B
> Manager [Amerinet] shall be entitled to all of the rights (including the right to participate in and receive all fees in respect of the sale of products and services under supplier agreement [sic] occurring after the date of closing on the Purchase Agreement) and shall be subject to the duties and obligations under, all contracts or arrangements that have not been assigned by JPC to [Amerinet] as a result of (i) the prior consent of a third party that has not been obtained or will not be obtained; or (ii) the assignment will have the effect of terminating the contract or arrangement; or (iii) the assignment will have the effect of causing JPC to be in default under the contracts or arrangement."

8. The Management Agreement addresses the rights and obligations of the parties only with respect to those Supplier and Participation Agreements that existed as of the date of the Purchase Agreement and were sold under the terms of the Purchase Agreement. [1]

---

[1] The Management Agreement provides, at section 2.01, that the Management Agreement shall apply to certain arrangements that JPC might establish after the effective date of the Management Agreement, but that section applies only arrangements in which JPC acts as manager of limited liability companies or member of a certain New York not-for-profit corporation, none of which is relevant to the dispute that is the subject of the Claim.

9. In sum, the Management Agreement provided that Amerinet would service the existing Assumed Agreements on behalf of JPC and would receive in exchange the contract administration fees to which JPC was entitled under the Assumed Agreements.

10. Pursuant to the Management Agreement, Amerinet was permitted to perform the services on behalf of JPC under the Supplier Agreements only until consent was received to assign such Supplier Agreement to Amerinet (at which time Amerinet would become the direct contracting party) or the expiration of the terms of such Supplier Agreements (at which time Amerinet would have to commence negotiations with the supplier in its own name for a new contract). In that regard, the Management Agreement states,

> "WHEREAS, the parties contemplate requesting the consent of such third parties after the Closing (as defined in the Purchase Agreement), however, prior to the obtaining of such consent, Manager [Vector] may provide services as requested by JPC until such consents are obtained or the term of such agreements expire.

11. On information and belief, the contract upon which the Claim is based is a contract in which the supplier is GE Medical Systems and which contract was entered into by GE Medical Systems and Amerinet in or about November 2004, *afte*r the closing under the Purchase Agreement and *after* the expiration of the term of the contract between JPC and GE Medical Systems that existed at the time of the Purchase Agreement.

12. On information and belief, Amerinet entered into the GE Medical Systems contract in the name of JPC instead of Amerinet, although Amerinet was not authorized to do so, and GE Medical Systems accordingly made the payment subject to the Claim to JPC instead of Amerinet.

13. Accordingly, because the GE Medical Systems contract upon which the

Claim is based was not one of the Assumed Agreements and is not subject to the Management Agreement, the arbitration provisions of the Management Agreement do not require JPC to arbitrate disputes that relate to the GE Medical Systems agreement.

14. By reason of the foregoing, the Claim is not arbitrable and the arbitrator does not have jurisdiction over the dispute set forth in the Claim.

**Answer to Claim**

15. JPC denies that it is in breach of the Management Agreement, and that it owes any money to Amerinet.

16. This dispute should not be resolved in the absence of GE Medical Systems, the entity that paid the funds that are the subject of the Claim, because GE Medical Systems has an interest in such funds and the resolution of the Claim.

**Counterclaim**

In the event that the arbitrator refuses to dismiss the Claim for lack of jurisdiction or arbitrability, JPC asserts the following counterclaims:

17. At the time of the Purchase Agreement, JPC was a Manager and Member of the following limited liability companies: Coastal Cooperative of New Jersey, LLC; Cooperative Healthcare Services of South Jersey, L.L.C.; and Cardinal Health Initiatives, LLC. (the "Companies").

18. At the time of the Purchase Agreement, JPC was a Member of Mid-Atlantic Group Network of Shared Services, Inc., a New York not-for-profit corporation ("Magnet").

19. In the Management Agreement, JPC engaged Amerinet to service JPC's

management obligations under the terms of management of each of the Companies' operating agreement and the Magnet governing documents. In exchange, JPC assigned to Amerinet any rights of JPC as a member or manager of such Companies and Magnet.

20. In the Management Agreement, Amerinet undertook administrative duties, and duties to negotiate contracts on behalf of the Companies, report to JPC and monitor fees paid by vendors, develop annual business plans, provide audit rights to JPC, and perform or satisfy all duties and obligations of JPC under the Magnet governing documents.

21. In the Management Agreement, Amerinet agreed to maintain, develop, and grow the Magnet group purchasing contracts during the term of the Management Agreement.

22. Amerinet breached the Management Agreement in that, among other things, Amerinet failed to maintain, develop, or grow the Magnet group purchasing contracts; failed to develop annual business plans for the Companies; failed to promote the business and interests of the Companies; failed to provide full audit rights to JPC; and served conflicting interests by inducing potential participants in Magnet contracts to participate in Amerinet contracts instead of Magnet contracts.

23. As set forth in section 4.2 of the Purchase Agreement, Amerinet is the agent of JPC for the purpose of obtaining the benefits of the Assumed Agreements for JPC. As agent, Amerinet owed JPC fiduciary duties and was bound to act at all times with utmost good faith. On information and belief, Amerinet breached its fiduciary duties to JPC by, among other things, serving conflicting interests by inducing Magnet or JPC participants to participate in Amerinet contracts instead of Magnet or JPC contracts and in other ways placing the interests of Amerinet above the interests of JPC.

24. The Management Agreement contains an implied covenant of good faith and fair dealing pursuant to which Amerinet agreed that it would not engage in any conduct that served to deprive JPC of the benefit of its bargain. The acts set forth above constitute a violation by Amerinet of its covenant of good faith and fair dealing.

25. By reason of the foregoing, JPC has been damaged in an amount of at least $75,000.00.

WHEREFORE, JPC requests a determination as follows:

A. The Claim of Amerinet is not subject to arbitration; or, in the alternative,

B. No proceeding with respect to the Claim should proceed in the absence of GE Medical Services;

C. Amerinet is not entitled to recover on its Claim;

D. JPC is entitled to an award of damages in the amount of at least $75,000 on its counterclaim; and

E. The costs and attorneys fees related to this proceeding should be charged to Amerinet.

Dated: February 21, 2007

ARTHUR R. LEHMAN, L.L.C.

By [signature]

Arthur R. Lehman
52 Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 697-2715
Facsimile: (212) 697-2773
Email: arthur@lehmanlawyer.com

EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK

Attorney: ARTHUR R. LEHMAN, ESQ - 1474

COUNTY OF NEW YORK

JOINT PURCHASING CORPORATION

Plaintiff(s)

- against -

AMERINET, INC. ET ANO

Defendant(s)

Index #: 102622/07

Purchased: February 26, 2007
Date Filed:

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK: COUNTY OF NEW YORK ss:

DAVID GOLDBERG BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION, OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on March 1, 2007 at 10:45 AM at

BY CT CORPORATION SYSTEM
111 8TH AVENUE
NEW YORK, NY10011

deponent served the within true copy of the SUMMONS & COMPLAINT on AMERINET GROUP PURCHASING LLC, the defendant/respondent therein named,

**LIMITED LIABILITY COMPANY**

by delivering thereat a true copy of each to MS. ELENA BOU personally, deponent knew said limited liability company so served to be the limited liability company described in said SUMMONS & COMPLAINT as said defendant/respondent and knew said individual to be the PROCESS CLERK thereof.

Deponent further states that he describes the person actually served as follows:

| Sex | Skin Color | Hair Color | Age (Approx.) | Height (Approx.) | Weight (Approx) |
|---|---|---|---|---|---|
| FEMALE | WHITE | BLACK | 30 | 5'5 | 130 |

The Summons Served had endorsed thereon the Index number and date of filing.

Sworn to me on: March 1, 2007

Linda Forman
Notary Public, State of New York
No. 01FO5031305
Qualified in New York County
Commission Expires August 1, 2010

Robin M. Forman
Notary Public, State of New York
No. 01FO6125415
Qualified in New York County
Commission Expires April 18, 2009

Stuart J. Forman
Notary Public State of New York
No 31-4828240
Qualified in New York County
Commission Expires June 30, 2007

DAVID GOLDBERG
License #: 916033
Docket #: 464860

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NEW YORK *Index No.* 102622/07

Calendar No.

JOINT PURCHASING CORP *Plaintiff(s) Petitioner(s)*

*against*

AMERINET, INC *Defendant)s) Respondent(s)*

*AFFIDAVIT OF SERVICE*

STATE OF DELAWARE, COUNTY OF: NEW CASTLE Ss.:

The undersigned, being sworn, says: Deponent is not a party herein, is over 18 years of age and resides at Wilmington, DE

On 2/28/07 at 1:30 PM .M., at C/O THE CORPORATION TRUST CO. 1209 ORANGE ST. WILMINGTON, DE

deponent served the within

☒ summons and complaint
☐ subpoena duces tecum
☐ citation ☒

on AMERINET, INC ☒ defendant ☐ witness hereinafter called therein ☐ -espondent the recipient lamed

**INDIVIDUAL 1.** ☐ by delivering a true copy *of each* to said recipient personally; deponent knew the person so served to be the person described as said recipient therein.

**CORPORATION 2.** ☒ a DELAWARE corporation, by delivering thereat a true *copy of each* to SCOTT LASCALA personally, deponent knew said corporation so served to be the corporation, described in same as said recipient and knew said individual to be thereof

**SUITABLE AGE PERSON 3.** ☐ by delivering thereat a true copy *of each* to a person of suitable age and discretion. Said premises is recipient's ☐ actual place of business ☐ dwelling place ☐ usual place of abode within the state.

**AFFIXING TO DOOR, ETC. 4.** ☐ by affixing a true copy of *each* to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place ☐ usual place of abode within the state. Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4 5A.** ☐ Deponent talked to at said premises who stated that recipient ☐ lived ☐ worked there. Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to recipient at recipient's last known residence, at and deposited said envelope in an official depository under exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4 5B.** ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly addressed to recipient at recipient's actual place of business, at in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the recipient.

**DESCRIPTION** ☒

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☒ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100- 130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☒ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

☐ Other identifying features:

**WITNESS FEES** ☐ $ the authorizing traveling expenses and one days' witness fee: ☐ was paid (tendered) to the recipient ☐ was mailed to the witness with subpeona copy.

**MILITARY SERVICE** ☐ I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient *wore* ordinary *civilian clothes and no military* uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Sworn to before me on 2/28/07

OFFICIAL SEAL
KEVIN DUNN
NOTARY PUBLIC - DELAWARE
NEW CASTLE COUNTY
My Commission Expires November 23,2010

License No.

DENORRIS BRITT