UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERINET, INC. | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 07-91 ML |
| JOINT PURCHASING CORPORATION, CREATIVE SOURCE CONCEPTS, INC., | : | |
| Defendants. | : | |

**AMERINET, INC.'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Amerinet, Inc. ("Amerinet"), hereby objects to Defendants' Motion to Dismiss for the reasons set forth in the accompanying Memorandum in Support of Objection to Motion to Dismiss.

Respectfully submitted,

Amerinet, Inc.
By its Attorney,

/s/ Linn F. Freedman
Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: June 22, 2007

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to:

David A. Wollin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

/s/ Linn F. Freedman

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERINET, INC.<br><br>Plaintiff,<br><br>v.<br><br>JOINT PURCHASING CORPORATION,<br>CREATIVE SOURCE CONCEPTS, INC.,<br><br>Defendants. | : | C.A. No. 07-91 ML |

**MEMORANDUM IN SUPPORT OF AMERINET, INC.'S OBJECTION TO DEFENDANTS' MOTION TO DISMISS**

Defendants seek to further delay these proceedings by inappropriately utilizing the instant Motion to Dismiss as a mechanism to seek reconsideration of this Court's May 22, 2007 Order denying Defendants' Motion to Stay. *See* Defendants' Memorandum in Support, p. 5 n. 1. The general rule, however, for a motion for reconsideration under Fed. R.Civ. P. 59(e), "is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" *Marks 3-Zet-Ernst Marks GMBH & Co. KG v. Presstek, Inc.*, 455 F.3d 7, 15 (1st Cir. 2006). Defendants do not attempt to present any new law or new facts related to their "first-filed" argument. Instead, Defendants admit that they simply failed to "brief to any considerable degree the substance of the first filed rule in [their] stay papers." *See* Defendants' Memorandum in Support, p. 4. As such, Defendants should not now be permitted to utilize the instant motion as "a vehicle... to undo [their] own procedural failures... introduce new evidence or advance arguments that could and should have been presented" previously. *Marks*, 466 F. 3d at 15.[1] Defendants' Motion to Dismiss should be denied on this basis alone.

---

[1] Defendants' attempt to reargue their failed Motion to Stay under the guise of the instant Rule 12(b)(6) motion is also suspect given the parties' apparent agreement that the "case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-

Alternatively, Defendants seek to inappropriately introduce evidence that goes beyond the four corners of the Complaint to purportedly show that Amerinet has failed to state a claim or join all necessary parties. In considering the instant Motion to Dismiss, however, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) and "must make all reasonable inferences in favor of the Plaintiff." *Rhode Island Resource Recovery Corp. v. Rhode Island Dept. of Envtl. Mgmt.*, 2006 WL 2128904 (D.R.I. July 26, 2006). Dismissal is only appropriate if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. In this case, Plaintiff has alleged that "Amerinet, Inc. is the successor-in-interest to Vector Healthsystems, Inc., which entered into a contract to purchase the Defendants' group purchasing business and contracts." *See* Complaint ¶ 2. It is undisputed that the Complaint complies with and exceeds the fact pleading standards contained in Rule 8(a) and alleges each element to support Plaintiff's claims for conversion, action on account, breach of contract, breach of implied duty of good faith and fair dealing, unjust enrichment, and declaratory judgment. As recently stated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969 (rejecting prior "no set of facts" standard set out in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, Defendants' Motion to Dismiss should be denied and this case should be permitted to proceed without further delay.

---

filed rule, applies." *Cruz v. Hartford Cas. Ins. Co.*, 2005 WL 1231965 at *3, Case No. 005-38S (D. R.I. May 20, 2005)(deferring "the ultimate decision on [a motion to dismiss] to the Western District of Texas and directing the Clerk to transmit a copy of the Order to the Judge presiding over the action in the Western District of Texas). In the Southern District of New York, Judge Koeltl has set Amerinet's Motion to Dismiss or Transfer for Improper Venue for oral argument on June 26, 2007.

## BACKGROUND

Defendants entered into an Asset Purchase Agreement, dated March 11, 2004, (the "JPC Asset Purchase Agreement") with Vector Healthsystems, Inc., ("Vector"), a Rhode Island corporation, with its principal place of business in Providence, Rhode Island. Amerinet, Inc. ("Amerinet") is the successor-in-interest to Vector.[2] At that time, Defendants exited the group purchasing business but continued to operate as a non-profit organization solely for the purpose of providing educational programs to the medical community.

Pursuant to the plain language contained in Section 2.1 of the JPC Asset Purchase Agreement, Defendants agreed to sell, assign, transfer and deliver to Vector:

> all of the following assets of the Sellers (the "Business") (**used or useful to conduct the healthcare group purchasing business of Sellers as presently conducted by the Sellers** the "Assets"):
>
> (a) the Sellers' participation contracts, agreements and arrangements with participants ("Participant Agreements");
>
> (b) the Sellers' contracts, agreements and arrangements with suppliers/vendors which have been disclosed in writing by the Sellers to the Buyer ("Supplier Agreements"); and
>
> (c) **all tangible and intangible assets necessary or appropriate for the performance of, and to realize the substantive benefits of, the Participant Agreements and the Supplier Agreements and to carry on the Business**, including but not limited to all tangible and intangible assets used or useful in the Business, intellectual property (including but not limited to trademarks), domain names/URLs, website, email addresses, telephone numbers, software and hardware (except those items set forth on Schedule 2.1).

JPC Asset Purchase Agreement, § 2.1 (emphasis added). The JPC Asset Purchase Agreement also contains a governing law section that states:

> This Agreement has been made in and its validity, interpretation, construction and performance, shall be governed by and be in accordance with the laws of the State of Rhode Island, without regard to conflicts of law principles, but subject to any

[2] Since 2006, Amerinet has maintained offices in Providence, Rhode Island.

> provisions of the New York Not-For-Profit Corporation Law to the extent applicable to JPC, which shall govern in any such circumstance. **Each party irrevocably agrees that any legal action or proceedings against or with respect to this Agreement may be brought in the courts of the State of Rhode Island, or in any United States District Court of Rhode Island, and, by its execution and delivery of this Agreement, each party hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue in any of the above courts**, but subject to the exclusive jurisdiction of any appropriate Court of the State of New York, including but not limited to the Office of the Attorney General, because of the not-for-profit status of JPC.

JPC Asset Purchase Agreement § 16.3 (emphasis added).

After benefiting from the JPC Asset Purchase Agreement for more than three years, Defendants first complained of Amerinet's use of the JPC name at the end of 2006 and then improperly withheld $406,528.34 in payments received under the assigned contracts to leverage a renegotiation of the agreements and re-enter the group purchasing business.

Amerinet initiated dispute resolution procedures more than a month before Defendants filed their Complaint in the Supreme Court of the State of New York. Only after JPC terminated informal attempts to resolve this dispute and rejected Amerinet's request to engage in a contractually mandated initial dispute resolution, did Amerinet file its Demand for Arbitration against JPC with the American Arbitration Association ("AAA") in Providence, Rhode Island. JPC filed its Response and Counterclaims to Amerinet's claims with the AAA raising issues related to the JPC Asset Purchase Agreement and objecting to the AAA's authority to address all issues raised by the parties. JPC did not, however, object to Rhode Island as an "inconvenient forum" with respect to the AAA proceedings.

In light of JPC's objection to the AAA's authority to address issues arising under the JPC Asset Purchase Agreement, the parties agreed to withdraw their respective claims without prejudice in order to litigate all issues in one forum. Prior to entering this agreement with

Amerinet's counsel, however, Defendants' counsel failed to disclose that he had already filed the Complaint against Amerinet in the Supreme Court of the State of New York (the "New York Action"). Only after Amerinet agreed to withdraw its arbitration demand did JPC's counsel indicate that he had filed the New York Action. At no time, however, did Amerinet discuss or agree to reassert its claims raised in the arbitration proceedings as a counterclaim to the New York Action. In fact, Amerinet had already drafted its Complaint to be filed in Rhode Island, obtained local counsel in Rhode Island, and delayed filing only in light of the pending arbitration. Amerinet filed its Complaint in this Court less than two weeks after JPC filed the New York Action.

## ARGUMENT

### I. The Forum Selection Clause Contained in the JPC Asset Purchase Agreement is Mandatory and Requires the Parties to Litigate in this Court.

Defendants contend that "they filed in New York first because that jurisdiction is a proper venue for the current litigation." *See* Defendants' Memorandum in Support, p. 5. This is not true. Pursuant to the mandatory and controlling forum selection clause contained in the JPC Asset Purchase Agreement, venue is proper in this Court; not New York.

Section 16.3 of the JPC Asset Purchase Agreement states, "this Agreement has been made in and its validity, interpretation, construction and performance, shall be governed by and be in accordance with the laws of the State of Rhode Island." It also provides that "each party irrevocably agrees that any legal action or proceedings against or with respect to this Agreement may be brought in the courts of the State of Rhode Island, or in any United States District Court of Rhode Island." Moreover, Section 16.3 of the JPC Asset Purchase Agreement contains unambiguous language providing that "each party hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue

in any of the above courts." These contractual clauses, taken as whole, constitute a mandatory forum selection agreement.

The language contained in Section 16.3 of the JPC Asset Purchase Agreement is directly analogous to language considered by the Seventh Circuit in *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525-526 (7th Cir. 2001). In *AAR Int'l*, the Seventh Circuit rejected the argument that the forum selection clause was permissive, not mandatory, because it provided that "suit *may* be brought in Illinois." *Id.* at 526 (emphasis in original). The Court found, "in this case we have more than merely a permissive forum selection clause; we have such a clause plus unambiguous language providing that the lessee shall not object to venue in an Illinois state or federal court on the ground that such a court is an inconvenient forum." *Id.* at 525-526. In so holding, the Seventh Circuit distinguished the permissive forum selection clause identified by the Second Circuit in *Blanco v. Banc Indus. de Venezuela, S.A.*, 997 F.2d 974, 979 (2d Cir. 1993),[3] which contained the word "may" in its forum selection clause but "did not include either the defendant's irrevocable consent to suit in designated fora or the defendant's waiver of *forum non conveniens* objections." *AAR Int'l, Inc.*, 250 F.3d at 526; *see also Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercia, C.A.*, 490 N.Y.S.2d 670, 674 (N.Y. Sup. Ct. 1985)(cited by the Second Circuit in *Blanco* as an example of where the permissive nature of a forum selection

---

[3] The forum selection provision at issue in *Blanco* states:

> [Proyecfin and BIV agree] that any legal action or proceedings arising out of or in connection with this Agreement may be brought [emphasis added] in the High Court of Justice in England, the Courts of the State of New York, the Courts of the United States of America in New York or the Courts of the City of Caracas, Venezuela, irrevocably submit to the jurisdiction of each such court and agree that any writ, judgment or other notice of legal process shall be sufficiently served on [them] (i) in connection with proceedings in England, if delivered to the Law Debenture Corporation, Limited at Estates House, 66 Gresham Street, London, EC2V 7HX or its other registered office for the time being and (ii) in connection with proceedings in New York, if delivered to CT Corporation System at 277 Park Avenue, New York, N.Y. 10017, U.S.A. or [its other] principal place of business in New York for the time being.

997 F.2d at 976.

clause was strengthened by language that "further and explicitly waived 'any objection which it may not or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement…' and further explicitly waived 'any claim that the State of New York is not a convenient forum for any such suit, action or proceeding'").

In this case, Defendants again fail to address *AAR, Int'l* and argue that, "the Purchase Agreement does not mandate Rhode Island as the exclusive jurisdiction for suit." *See* Defendants' Memorandum in Support, p. 9. Instead, like *Blanco*, the forum selection clauses in the Second Circuit case cited by Defendants are not analogous and do not contain any additional waiver language. *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. & Distrib. Inc.*, 22 F.3d 51, 52 (2d Cir. 1994). Other out-of-circuit district court cases cited by Defendants also fail to consider additional waiver language. *See Kingsway Fin. Servs., Inc. v. Pricewaterhousecoopers, L.L.P., 420 F.Supp.2d 228, 234 (S.D. N.Y. 2005); Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F.Supp.2d 1004, 1010 (D. Minn. 2003); and *Mitchell Health Tech., Inc. v. Naturewell, Inc.*, 2002 WL 32362650 at *2, Case No. 02-C-0439 (W.D. Wis. Dec. 2, 2002).

Defendants characterize the forum selection clause in the JPC Asset Purchase Agreement as permissive because it also contains an agreement that New York is an appropriate forum. This is, however, based on a selective reading of Section 16.3. As noted above, when the JPC Asset Purchase Agreement was negotiated and executed, Defendants exited the group purchasing business but continued to operate as a non-profit organization solely for the purpose of providing educational programs to the medical community. The language in Section 16.3 relating to "New York Not-For-Profit Corporation Law" and the "jurisdiction of any appropriate Court of the State of New York or administrative proceeding in such State" is specifically limited to "any

matter which requires the participation of any department or governmental agency of the State of New York, including but not limited to the Office of the Attorney General, because of the not-for-profit status of JPC."

In fact, the inclusion of the exception in Section 16.3 related to JPC's not-for-profit status supports Amerinet's position that the forum selection clause is mandatory and exclusive and refutes any argument that the parties' intended to use permissive language in the preceding clause. In *Am. Home Assurance Co. v. M/V Hanjin Marseilles*, 2004 WL 1197240, Case No. 03CV9539 (S.D. N.Y. June 1, 2004), the Court examined a similar carve out exception contained in the forum selection clause "that makes clear its mandatory nature." *Id.* at *4. The forum selection clause contained in the bill of lading at issue in *Am. Home Assurance Co.*, stated:

> (a) Any dispute arising under and in connection with this Sea Waybill shall be governed by German Law and determined by the Courts of Bremen.
>
> (b) With regard to contracts of carriage concluded in France, or entered into with a French port, the court where the carrier has its principal place of business be also competent in case of "APPEAL ON GUARANTEE" or "PLURALITE DE DEFENDEURS" or "CONNEXITE"... .

*Id.* The Court found the forum selection clause to be mandatory. *Id.* at *5. In so holding, the Court reasoned that "contracts must be read in their entirety" to "safeguard against adopting an interpretation that would render any individual provision superfluous." *Id.* "If the first paragraph of the forum selection clause were permissive, the France carve-out to the forum selection clause in the second paragraph would be superfluous. This further shows that the first paragraph of the forum selection clause is mandatory." *Id.*

Like the forum selection clause in *Am. Home Assurance Co.*, the language in Section 16.3 of the JPC Asset Purchase Agreement that creates the carve out exception for JPC's not-for-profit status would be rendered superfluous if the forum selection clause was considered

permissive rather than mandatory. The not-for-profit exception, however, is not applicable in this case. Defendants make no allegations that their claims asserted in the New York Action impact JPC's not-for-profit status or require approval or oversight by the New York Office of the Attorney General. As such, the exception in Section 16.3 for JPC's not-for-profit status does not apply. Any argument that the inclusion of "exclusive" language in the governing law section of the JPC Asset Purchase Agreement related to actions involving the New York Attorney General infers that the parties intended to use permissive language in the preceding clause must similarly fail. New York is not a proper venue, and Defendants' Motion to Dismiss should be denied accordingly.

## II. Convenience of the Parties and Witnesses – Defendants Waived Any Objections to Venue in the District of Rhode Island.

Defendants' exhortations related to the extra cost and inconvenience of litigating in this Court rather than the Southern District of New York should not be given any weight, given their prior waiver of any such objections to venue. Defendants explicitly waived any objections to the cost and inconvenience of litigating this action in Rhode Island in the governing law section of the JPC Asset Purchase Agreement. Specifically, Section 16.3 states, "each party…hereby irrevocably waives any and all objections which it may have as to venue in [any United States District Court of Rhode Island]" (emphasis added).

Where it is clear that the parties considered (and waived) any objections related to the convenience of the venue identified in a forum selection clause, the Court should not consider Defendants' objections in its analysis. *See Kotan v. Pizza Outlet, Inc.*, 400 F. Supp.2d 44, 49 (D.D.C. 2005) ("agreement to waive venue objections to a particular forum … colors plaintiffs' other arguments premised on the inconvenience of parties and witnesses and interest of justice"); *see also Lyon Fin. Servs., Inc. v. Will H. Hall & Son Builders, Inc.*, Case No. 04CV4383, 2005

WL 503371 at *4-5 (D. Minn. March 4, 2005)(stating that it is a "high bar" to demonstrate inconvenience "[s]ince it may be assumed that the parties consider the inconvenience of the forum at the time they enter a contract" containing a forum selection clause); *2215 Fifth St. Assocs. v. U Haul Int'l, Inc.*, 148 F.Supp.2d 50, 58 (D.D.C. 2001)("Plaintiff evidently agreed that any inconveniences were manageable when it agreed to [the] inclusion [of a forum selection clause] in the Option Agreement"); and *Third Avenue Trust v. Suntrust Bank*, 163 F. Supp. 2d 215, 220-21 (S.D.N.Y. 2001)(difficulties in procuring evidence and witnesses outside of New York "was, or reasonably should have been, contemplated by [defendant] when it agreed to the forum selection clauses"). Consistent with its prior and explicit waiver, JPC did not object to Rhode Island as an "inconvenient forum" with respect to the prior AAA proceedings.

To the extent this Court deems it necessary to consider the convenience factors and interests of justice,[4] Amerinet refers to and incorporates herein by reference Sections II(A) and (B) of its Objection to Defendants' Motion to Stay. *See* Doc. No. 8, pp 9-12. In addition, and contrary to Defendants' unsupported assertions, Amerinet has maintained an office in Providence, Rhode Island since 2006, and anticipates that employees from its Rhode Island office will be witnesses in this case in addition to several key non-party witnesses that reside in Rhode Island. Moreover, as discussed above, Defendants' "choice of forum" is vitiated by the forum selection clause in the JPC Asset Purchase Agreement and should be disregarded since, as discussed below, Amerinet initially initiated arbitration proceedings and is the true plaintiff in this dispute.[5]

---

[4] Defendants' reference to JPC's not-for-profit status as a factor favoring the New York forum is misleading, at best, since JPC's not-for-profit status is not at issue in this case. *See* Defendants' Memorandum in Support, p. 9.

[5] Defendants' even admit that "the parties were already 'litigating' their disputes at the time the New York action was filed." *See* Defendants' Memorandum in Support, p. 12.

## III. Departure From First Filed Rule is Appropriate to Encourage Alternative Dispute Resolution and Given the Relative Procedural Posture of Both Cases.

Defendants argue that this case should be dismissed because they filed the New York Action less than two weeks before Amerinet filed its Complaint in this case. It is well established, however, in both the First and Second Circuits that exceptions to the "first filed" rule exist and are regularly applied. *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977)("While the first-filed rule may ordinarily be a prudent one, it is so only because it is sometimes more important that there be a rule than that the rule be particularly sound"); *Hammet v. Warner Bros. Pictures, Inc.*, 176 F.2d 145, 150 (2d Cir. 1949)(the "first filed" rule "is not to be applied in a mechanical way regardless of other considerations"). In fact, courts applying *Codex* have found that "giving priority to the first-filed case is not a rigid rule," *Davox Corp. v. Digital Sys. Int'l*, 846 F.Supp. 144, 147 (D. Mass. 1993), and that "the first-filed preference… is not to be given great weight." *Lexington Ins. Co. v. City of Phoenix*, Ariz., 1996 WL 463672, Case No. 96-10319 at *1 (D. Mass., July 31, 1996); *see also Nortek, Inc. v. Molnar*, 36 F.Supp.2d 63, 69-70 (D. R.I. 1999)("The forum where an action is first filed is given priority over subsequent actions unless there is a 'showing of balance of convenience in favor of the second action' or there are special circumstances which justify giving priority to the second"); *EMC Corp. v. Roland*, 916 F.Supp. 51, 53-54 (D. Mass. 1996) (rejecting first-filed rule).

In this case, there are multiple considerations which require a departure from the first-filed rule. First, the relative backlog of cases in the District of Rhode Island is significantly less than in the Southern District of New York. *See* United States District Court Judicial Caseload Profile at http://www.uscourts.gov/cgi-bin/cmsd2006.pl. As such, it is unlikely that prosecution of this case in the Southern District of New York would fulfill the purpose of the first-filed rule and promote judicial efficiency.

In addition, Amerinet initiated the Rhode Island action less than two weeks after Defendants filed the New York Action. Significantly, neither case has progressed beyond the initial pleadings. Defendants have not shown that they would be precluded from joining all necessary parties and asserting identical claims in this case (via a counterclaim or third party action) or that the two cases could not be consolidated to efficiently address all issues.

Moreover, this case should be permitted to proceed to discourage anticipatory filing and to encourage alternative dispute mechanisms. In *Lexington Ins. Co.*, the Court strongly criticized the plaintiff's "sharp practice" of filing an anticipatory declaratory judgment claim "to obtain its choice of forum" where there was "not a scintilla of evidence that Lexington was motivated to bring suit by any concern about the possibility of uncertainty or delay." 1996 WL 463672, Case No. 96-10319 at *2. In finding that transfer was an "appropriate mechanism for discouraging anticipatory filing," the Court reasoned "a system that permits a potential defendant to gain from anticipatory filing increases the burden on all districts as parties rush to file suit in their home districts rather than attempting to negotiate their differences." *Id.* Similarly in *Nortek*, the Court rejected the first filed rule where plaintiff shopped for a forum while defendant's attorney "reasonably held off filing suit… because he thought the parties were still negotiating" and "one would reasonably expect that after negotiations broke down, [plaintiff] would file this case in Buffalo." 36 F. Supp.2d at 70. In so holding, the Court stated, "it will not reward conduct that undermines the sound policy of promoting settlements and negotiations outside the courthouse." *Id.*; *see also Fuji Photo Film Co., Ltd. v. Deep Creek Design, Inc.*, Case No. 98CV2776, 1998 WL 872416 at *2 (S.D.N.Y. Dec 15, 1998) (rejecting first-filed rule where "[plaintiff] had prepared a complaint that it was ready to file but deferred while pursuing settlement talks"); *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F.Supp. 114, 117 (S.D. N.Y. 1984)("in

the instant situation where each side, after a breakdown in settlement negotiations, engages in a race to the courthouse to achieve 'first filed' status, the courts should be concerned with what the interests of justice require and not with who won the race").

In this case, Amerinet attempted to resolve this dispute informally and without resort to litigation on a number of occasions. These discussions, however, were terminated by Defendants. In addition to pursuing informal discussions, Amerinet sought to enforce the alternative dispute resolution provisions in the Management Services Agreement, but its request was rejected by JPC. Only then did Amerinet initiate arbitration proceedings with the AAA in Providence, Rhode Island. JPC filed its Response and Counterclaims to Amerinet's claims with the AAA raising issues related to the JPC Asset Purchase Agreement and objecting to the AAA's authority to address all issues raised by the parties. At that time, JPC did not object to Rhode Island as an "inconvenient forum." Almost simultaneously, however, Defendants filed their Complaint against Amerinet in the Supreme Court of the State of New York.

On March 8, 2007, the parties agreed to withdraw their respective claims without prejudice in order to litigate all issues in one forum. That same day, counsel for Amerinet sent a letter to the AAA case manager withdrawing Amerinet's Demand for Arbitration without prejudice and confirming JPC's agreement to withdraw its Counterclaims. Despite the fact that Defendants' counsel had been regularly corresponding with David Wells, Amerinet's long-time outside counsel, in conjunction with the arbitration proceedings, he did not disclose that he had filed the State Court Action prior to reaching agreement to withdraw the arbitration claims. Only after Amerinet agreed to withdraw its arbitration demand did JPC's counsel indicate that he had filed the New York Action. At no time, however, did Amerinet discuss or agree to reassert its claims raised in the arbitration proceedings as a counterclaim to the New York Action. In fact,

Amerinet had already drafted its Complaint to be filed in Rhode Island, obtained local counsel in Rhode Island, and delayed filing only in light of the pending arbitration.

Defendants' maneuvering and questionable candor calls into doubt any assertion that they were not forum shopping, and is certainly contrary to "the sound policy of promoting settlements and negotiations outside the courthouse." *Nortek, Inc.*, 36 F.Supp.2d at 70. Like *Nortek* and *Lexington Ins. Co.*, this Court should reject the first-filed rule and deny Defendants' Motion to Dismiss.

## IV. Evidence Beyond the Four Corners of the Complaint Should Not Be Considered.

Defendants' attempt to challenge Amerinet's allegations by introducing evidence beyond the four corners of the Complaint is inappropriate in a Motion to Dismiss. Specifically, Defendants seek to introduce three letters (as well as affidavits previously filed in the Southern District of New York) as evidence that Amerinet is not a proper party in this action.

In support of their attempt to introduce this evidence, Defendants rely on *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014 (1st Cir. 1988), for the proposition that it is appropriate for the Court to consider documents referred to or that are central to the claims presented. *See* Defendants' Memorandum in Support, p. 13 n.4. In *Fudge*, the District Court acted properly by considering a copy of the Penthouse article submitted as an exhibit to the Defendant's Motion to Dismiss (but not as an exhibit to the complaint) where the Plaintiffs' Complaint alleged that the writing and photographs in the magazine were libelous. 840 F.2d at 1014. In so holding, the Court stated, "Clearly, not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss. But here the article was not merely referred to in plaintiffs' complaint but was absolutely central to it." *Id.* at 1015 (internal citations omitted).

In this case, Defendants do not attempt to attach the JPC Asset Purchase Agreement[6] or even the subsequent asset purchase agreement transferring Vector's interests acquired pursuant to the JPC Asset Purchase Agreement. Instead, Defendants attempt to rely on two letters dated May 1, 2006 from Vector notifying Defendants of the subsequent sale of certain assets (Defendants' Ex. 8) and a letter agreement dated September 25, 2006 delineating Defendants' obligation and the procedures for remitting payments received by Defendants under certain contracts that were sold pursuant to the JPC Asset Purchase Agreement (Defendants' Ex. 9). Amerinet did not refer to these documents in its Complaint and, unlike the article in *Fudge* (or even the JPC Asset Purchase Agreement), these documents cannot be considered central to the claims presented. *See Goodman v. The President & Trs. of Bowdoin Coll.*, 135 F.Supp.2d 40, 47 (D. Me. 2001)(refusing to consider supplemental papers, including letters, transcripts and reports, that were not incorporated into the complaint).

In addition, it is disingenuous for Defendants to say that "Amerinet, Inc. has no claim to assert in this case" when they have named Amerinet as a defendant in each of their claims in the New York Action, including their interpleader claim related to the improperly withheld funds that are directly at issue in this case. *See* Defendants' Memorandum in Support, p. 13. If upon further investigation, Amerinet concludes that Amerinet Group Purchasing, LLC should be joined as a party to this litigation, it will file an Amended Complaint (or, if appropriate, seek leave to do so) under Rule 15(a). Alternatively, Defendants may seek to join Amerinet Group Purchasing, LLC (and any other parties) as counter-defendants or third-party defendants. It is

[6] Amerinet was not required to attach a copy of the JPC Asset Purchase Agreement to its Complaint and, in fact, properly and intentionally chose not to do so because of the confidentiality clause contained in the JPC Asset Purchase Agreement. If the JPC Asset Purchase Agreement is to be submitted to this Court, Amerinet believes it should be filed under seal.

not necessary, however, for this Court to dismiss Amerinet's Complaint and Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

Amerinet, Inc.
By its Attorney,

/s/ Linn F. Freedman

Linn F. Freedman, Esq. (#4778)
Nixon Peabody, LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Telephone: 401-454-1108
Facsimile: 866-807-6614

Dated: June 22, 2007

CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2007, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to:

David A. Wollin
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903

/s/ Linn F. Freedman